### John Paige *vs.* Ephraim Stone & another.

A. conveyed his property, in trust for his creditors, to five assignees who appointed two of their number to transact the business of the trust. These two authorized A. to act as their agent, and he gave a note "for the assignees." *Held,* in a suit against the two on the note, that parol evidence was admissible to show that they were intended as promisors, and not the five assignees

An agent employed in the manufacture of carriages has no authority, by implication from the nature of that business, to bind his principal by a negotiable note given for labor or materials.

In a suit against two principals on a negotiable note, of which they had no knowledge before action brought, given in their names by their agent, who had no express authority, nor any authority by necessary implication from the nature of his business, to give such note, it was *held,* that evidence of the agent's having given two similar notes, to the first of which one only of the principals afterwards assented, and the last of which, for a small sum, the principals directed to be settled after they were sued upon it, was not sufficient to prove the authority of the agent to bind them by the third note.

When a party, dealing with an agent, takes his promissory note, with a knowledge of his agency, and of the liability of the principal for the debt for which the note is given, he thereby discharges the principal; and the contract cannot be afterwards rescinded, and a new one made, by which the principal will be bound, without his knowledge and assent.

ASSUMPSIT by the indorsee of the following note : " Templeton, November 2d 1837. For value received, I promise to pay Luke L. Knight, or order, one hundred and fifty six dollars and eighty two cents, on demand, with interest. Asa Fessenden, for the assignees." The defendants filed the following specification of defence : " 1. They deny the execution of the note declared on. 2. They deny that the note was given for a good consideration. 3. They say that the note, if executed by any one claiming authority to bind the defendants, was fraudulently given by such supposed agent ; that the fraud was known to the promisee ; and that the note was not transferred until it was long overdue. 4. They deny the authority of said Fessenden to bind them by the note."

At the trial in the court of common pleas, before *Wells*, C. J. the note was produced, and two indorsements of payment appeared thereon, signed by Knight, the promisee ; one of $19·53, dated December 13th 1837, and the other of $4, dated March 30th 1838. The plaintiff, to prove the execution of the note, called Fessenden, the supposed agent, and Knight the promisee.

Fessenden testified that he signed the note, but could not tell whether the words " for the assignees " were written when the note was given, or when one of the payments was made and indorsed thereon ; that they were written by him at one of these times ; that the payments were made by him from funds in his hands, " growing out of the business " hereinafter described.

Knight testified that the note was originally signed " Asa Fessenden," without words following the name ; that he could not remember when the words \ " for the assignees " were written, but that it was soon after the note was given ; that he could not say it was within four months after the date of the note ; that he did not recollect whether he told one Fiske that the words were added about six months after ; that he went to Fessenden, some time after the note was given, and got him to put the words upon it ; and that he transferred the note to the plaintiff in the summer of 1842.

14 *

He further testified that the note was given for work done by him in the shop, under the control of Fessenden, and within two years from the date of the note ; that a settlement took place between him and Fessenden, and that he supposed, when he took the note, that the defendants were liable to pay his account for work ; that he sold the note for $65. He did not testify, and there was no evidence, that the defendants were called upon to pay the note, or that they knew of its existence, until the present suit was commenced.

The plaintiff put into the case an indenture, dated November 28th 1833, by which the said Fessenden transferred his property to John Flint, Stephen P. Maynard, Artemas White and the defendants, in trust for the benefit of certain creditors therein named, parties of the third part.

Maynard, one of said assignees, testified that at a meeting of the assignees, soon after the execution of said indenture the defendants were chosen to manage the concern, and that he went to work at their request, and charged his work to them.

Fessenden, being recalled, testified that none of the assignees, except the defendants, Stone and Lee, acted in the transactions of the assignees ; that the note in question was given for the work of Knight ; that he (Fessenden) was acting as agent for the defendants, and that the agency grew out of the manner of doing business ; that the defendants never expressly authorized him to sign notes in their behalf; that his business, at the time of the assignment of his property, was carriage-making ; that the assignees appointed by the indenture agreed that the defendants should act in behalf of all, in the execution of the trust ; that he was not, at first, allowed to make contracts in their behalf, but was allowed to proceed in carrying on the business he had been engaged in, using the assigned stock, tools, &c. for that purpose ; that he was to receive his support, and that if there should be any profit from the business, he was to have it, after the debts provided for in the assignment were paid ; that he continued to carry on the business, until after the note in suit was given and altered to its present form; that he hired men, bought stock, and managed

the business generally, making contracts in the absence of the defendants, and that the defendants, in several conversations, acknowledged their liability to pay for labor hired, and stock purchased by him ; that he, in May 1836, as agent, settled with a workman in his employ, who wished to leave the neighborhood, and desired a note for the amount due to him ; that the witness did not, at that time, consider himself authorized to give notes for the defendants, but that he gave the workman a note, signing for the assignees, and, as soon as he saw one of the defendants, informed him what he had done, and the defendant made no reply ; and that the witness afterwards paid that note.

This witness further testified that, in 1836, he purchased stock at auction, with the consent of Lee, one of the defendants, and gave his note therefor, signing it for the assignees, in the presence of Lee, who indorsed it ; that the witness, in February 1838, gave a note of $58·98, for labor or stock, to Douglass & Bartlett, signing it " Asa Fessenden, for the assignees," upon which payments were made, in October and November following, to the amount of $25, and that the defendants were afterwards sued on the note for the balance due, and, while the action was pending, the debt and costs were paid by the defendants' direction. (There was no evidence that the defendants knew of the existence of said note, until it was sued.)

This witness further testified that, in one of the conversations that he had with the defendant Stone, in 1838, at the shop, Stone stated — Lee, the other defendant, being present — that all the property there belonged to them ; and that they did not expect nor wish to get rid of the contracts for carrying on the business.

This witness further testified that he was never expressly authorized to give notes for the defendants ; that he appropriated, with their consent, the assigned property, to the amount of five or six hundred dollars, in payment of debts due from him, not provided for in the assignment, and that he appropriated between two and three hundred dollars of money, the

proceeds of said property, to his own private use, without the knowledge of the defendants ; that the witness, in April 1841, assigned his property under the insolvent law of 1838, and that the defendants proved their claims against him in the same year.

Other witnesses testified to declarations of the defendants that they were liable for debts contracted for work, stock, &c. in the business of carriage-making carried on by Fessenden.

There was no evidence tending to show that Flint, Maynard and White (the other assignees) had any knowledge that notes had been given by Fessenden, or that they had any knowledge of the course of the business, except the fact that they worked in the shop, and the testimony of one of them (Maynard) that the defendants, at the time of the assignment, wished him to work there.

The defendants produced numerous notes, receipts and other instruments, given by Fessenden, in the course of business, in his own name, in four successive years, begining in 1835 ; and there was no evidence of Fessenden's authority to bind the defendants, except such as resulted from the foregoing testimony.

The defendants' counsel objected to the maintenance of the action, " 1st, that the note does not purport to be the note of the defendants; 2d, that if the note is the note of the defendants, it is the note also of the other assignees, Flint, Maynard and White, and that evidence should be given of authority to bind them, in order to make the note valid : 3d, that as matter of law upon the evidence, there was no authority in Fessenden to alter the writing declared on. And said counsel requested the judge to instruct the jury, that authority in Fessenden to make contracts, or give negotiable notes, in the ordinary course of business, would not be sufficient evidence of authority to alter said writing after it had been received in payment of the amount due to Knight ; and also to instruct the jury, that the note, as originally given by Fessenden, and received, held and used by

Knight, was in law a payment of the debt due to Knight for the work for which it was given.

The judge instructed the jury, (among other things,) " that the note, as originally given, was the contract of Fessenden, and bound him alone ; and that the addition of the words ' for the assignees,' in the way and for the purpose testified to, was not, strictly speaking, an alteration of the original contract, but (granting that Fessenden was authorized to do what he testified he intended to do) the substitute of one contract in lieu of another ; and that, after these words were added, it ceased to be the note of Fessenden, and became the contract of the persons designated by the words ' the assignees,' and of them alone ; and that the last contract took effect when the note, in its changed state, was redelivered to Knight, which time appeared, from the evidence, to be between the date of the note, and March 30th 1838 : That it was for the jury to determine whether they could, from the evidence, decide what was meant and understood by the words ' Asa Fessenden, for the assignees ; ' that if, from all the evidence in the case, they were satisfied that, by the use of these words, the defendants were meant to be designated, and Fessenden and Knight meant to make them the parties to the contract as promisors, then the defendants would be liable in the same way as if their names had been subscribed by Fessenden : That it was a question of fact, to be decided by the jury, upon all the evidence, whether Fessenden was authorized to bind the defendants by the contract sought to be enforced ; and that the fact, if proved, that he had appropriated some of the trust property to his own use, and was indebted to the defendants on this account, was evidence, for the consideration of the jury, tending to prove that Fessenden, in giving the note, acted wit!.out authority, but did not raise any legal inference of a want of authority : That the giving of the first note, and the payment made on it before it was changed, constituted a presumption, or *primâ facie* evidence, that it was received in payment of the original account, but was not conclusive of the fact."

A verdict was returned for the plaintiff, and the defendants alleged exceptions to the judge's rulings and instructions.

*C. Allen & J. Mason,* for the defendants. Parol evidence was not admissible to vary the import of the note, and show that "the assignees" meant part only of the assignees. Chit. Con. (5th Amer. ed.) 104.

Whether the note was received in payment was a question of law, and should not have been submitted to the jury. It has always been decided by the court. *Thacher* v. *Dinsmore,* 5 Mass. 299. *Wiseman* v. *Lyman,* 7 Mass. 286 *French* v. *Price,* 24 Pick. 13. The presumption is, that a negotiable note is payment, and where, as in this case, there is no evidence to rebut the presumption, the jury should be instructed that it is payment, and not that it is for them to decide the point. Knight knew that Fessenden was an agent, and, by taking his personal note, he elected to take security from him, and cannot resort to the defendants. Story on Agency, §§ 266 – 268. *Paterson* v. *Gandasequi,* 15 East, 62.

It was also a question of law, on the evidence, whether Fessenden was authorized to bind the assignees by note, and that question ought not to have been submitted to the jury. *Odiorne* v. *Maxcy,* 13 Mass. 178. Story on Agency, § 87. It is clear that he had no authority to change a note, by taking up his own and converting it into a note of the assignees. *Graham* v. *Dyster,* 6 M. & S. 1. Russell on Factors and Brokers, 53.

Fessenden could not legally act as agent of the assignees in giving the note, as he was personally interested in the matter. Story on Agency, §§ 9, 210, 214.

*B. F. Thomas,* for the plaintiff. Parol evidence was rightly admitted to point the application of the words "for the assignees." 23 Amer. Jurist, 280. *Mechanics' Bank of Alexandria* v. *Bank of Columbia,* 5 Wheat. 326. The note was properly signed to bind the defendants. Story on Notes, § 69. Story on Bills, § 76, *note* 4. 1 Stephens N. P. 817. Bayley on Bills, (1st Amer. ed.) 51. *Emerson* v. *Providence*

*Hat Manuf. Co.* 12 Mass. 237. And the evidence shows that the defendants authorized Fessenden to bind by a note so signed.

The giving of a negotiable note for goods or labor is not payment unless it is intended as such, and the intention is a question for the jury. Story on Notes, §§ 104, 404, 438. *Watkins* v. *Hill*, 8 Pick. 522. *Butts* v. *Dean*, 2 Met. 76. *Maneely* v. *M'Gee*, 6 Mass. 143. *Howland* v. *Coffin*, 9 Pick. 52. The note in question was given for services rendered to the defendants, and the payments on it were made from their funds. These facts show that the note was not intended as payment of Knight's bill, and that he did not rely on Fessenden alone.

The judge rightly ruled that it was for the jury to decide whether Fessenden was authorized to bind the defendants by the note. In all cases, except where an authority is derived solely from a written instrument, the jury are to look at all the evidence, viz. ratification of similar notes, &c. Story on Agency, § 104. 12 Mass. 240, per Parker, C. J. *N. E. Marine Ins. Co.* v. *De Wolf*, 8 Pick. 56.

The testimony of Fessenden, that he did not remember whether he put the words "for the assignees" on the note when it was made or afterwards, shows his original intention to give the note of the assignees. But if he bound himself, he did not thereby discharge the defendants from their liability. Story on Agency, § 270.

It does not appear that Fessenden had any personal interest that would prevent his legally acting as agent of the defendants in giving this note. It is not shown that he owed them. Besides; he was authorized to pay his own debts to a certain amount.

HUBBARD, J. It is not necessary to settle all the questions raised in this case ; but we think it was properly left to the jury to determine what was meant and understood by the words "Asa Fessenden, for the assignees," and whether the defendants were the only acting assignees.

In examining the evidence, as the same is reported, we are

satisfied that there was no express authority originally given to Fessenden to sign notes binding the assignees, treating, for this purpose, the two defendants as assignees. Fessenden had been engaged in the business of carriage-making, and, becoming embarrassed, he assigned his property to the defendants and three others, for the benefit of his creditors; and he afterwards carried on the business for the assignees, making purchases of stock, hiring and paying workmen, and disposing of the manufactured goods. It was a business which, in the conducting of it, required no authority to bind the principals by note. Such an authority is neither implied from the nature of the business, nor to be presumed from any supposed convenience in transacting it to advantage. See *Taber* v. *Cannon,* 8 Met. 458, 459.

The power of binding by promissory negotiable notes can be conferred only by the direct authority of the party to be bound, with the single exception where, by necessary implication, the duties to be performed cannot be discharged without the exercise of such a power. To facilitate the business of note making, and thus affect the interest and estates of third persons to an indefinite amount, is not within the object and intent of the law regulating the common duties of principal and agent; neither is the power to be implied because occasionally an instance occurs in which a note, so made, should in equity be paid. *Emerson* v. *Providence Hat Manuf. Co.* 12 Mass. 237.

The plaintiff's cause, then, must rest either on the express recognition of this note by the defendants, or on the right of Fessenden to bind them by note, by reason of his exercise of such a right during his agency, and within their knowledge. But the testimony sustains neither proposition. There was no evidence that the defendants knew of the existence of this note, till it was sued; nor was such a usage proved, in respect to making notes by Fessenden, as can bind the assignees. Only two instances, besides the present, have been certified to, in one of which only one of the assignees assented, and his assent cannot bind the other without

further evidence ; and in the other the note was small, and after being put in suit was settled by their directions; but whether their previous assent to it was obtained or not is not stated.

But it appears, further, that the note of Fessenden was taken by Knight, with the knowledge, on his part, of the defendants' liability for work so performed, and of his (Fessenden's) agency, and authority to contract on their account for the work. And we are of opinion that the taking of the note of the agent alone, under the knowledge of the circumstances, is a discharge of the principal ; a rule well established in the dealings of merchants and factors. *Paterson* v. *Gandasequi*, 15 East, 62. *Wilkins* v. *Reed*, 6 Greenl. 220. *French* v. *Price*, 24 Pick. 13. *Green* v. *Tanner*, 8 Met. 411. The note having been received in payment, Knight and Fessenden could not afterwards rescind the contract and make a new agreement, either in the form of a note or otherwise, binding the assignees for the preëxisting debt, without their knowledge and assent.

In coming to this decision, we do not overlook the fact — though we are by no means governed by it — that the plaintiff is a purchaser, under value, some years after the existence of the contract, without notice to the defendants, and that the claim is one of strict law, without those accompanying circumstances of equity which occasionally afford reasons for enforcing demands not free from doubt.

*New trial to be had in this court.*