DANIEL T. YOUNGS, Appellant, *v.* BALTHAZAR DE BENOIT STAHELIN, Respondent.

In general, where the obligation of a third party is received from the debtor by the creditor at the time the debt is contracted, the presumption is that it is agreed to be taken in payment: Per SMITH, J.

Such presumption is rebutted by evidence of a contrary agreement, or understanding of the parties, which may be inferred from their subsequent conduct in respect to such transaction.

Where such obligation is received by the creditor as collateral security, he may proceed to collect the collaterals after the principal debt becomes due and remains unpaid; and he will be chargeable only with the amount collected thereon.

Where the debtor subsequently pays the principal debt, without being aware that anything has been realized by the creditor upon the collaterals, and the creditor subsequently returns the collaterals and tenders back the amount he has collected thereon, no action will lie on the part of the debtor to recover back of the creditor the money paid by him on the principal debt.

ACTION to recover back money paid on two promissory notes, dated 16th November, 1848, one for $341.03, and the other for $341.73, given by the assignors of the plaintiff to the defendant.

The cause was tried at the New York Circuit, in January, 1865, before Mr. Justice MORRIS, without a jury. The judge found the following facts:

The plaintiff was the general assignee of Caffe & Cutter, a firm doing business in the city of New York up to the time of their failure and assignment, in October, 1853. Caffe & Cutter, prior to their failure, were importing merchants in New York, of millinery goods. Stahelin, the defendant, was a manufacturer of millinery goods at Basle, Switzerland. Caffe & Cutter purchased goods of the defendant, and made an arrangement with him by which the defendant was to receive payment for the goods the firm should order from him, in the following manner: Stahelin, when requested to do so, was to forward goods to Caffe & Cutter at New York, and draw upon Coates & Co., bankers at London, for the amount of the invoice at 120 days' sight. Caffe & Cutter had made an arrangement with Coates & Co.

by which Coates & Co. were to accept the drafts of Stahelin and draw upon them at New York for the amount, at 90 days' sight. According to this arrangement, business was for some time conducted.

On the 13th August, 1847, Stahelin drew upon Coates & Co. for £64 4s. sterling, at one hundred and twenty days' sight, and on the 19th August, 1847, Coates & Co. accepted the draft. On the 15th September, 1847, Stahelin drew upon Coates & Co. for £69 8s. sterling, at 120 days' sight, and on the 29th September, this draft was accepted by Coates & Co. Coates & Co. drew upon Caffe & Cutter for the amount of each of the said acceptances, at 90 days, which drafts were accepted by Caffe & Cutter. Before either of the acceptances of Coates & Co. became due, that firm failed in business, and were, according to the law of England, declared bankrupts.

On the 1st December, 1847, Caffe & Cutter, by letter, informed Stahelin of the failure of Coates & Co. and directed Stahelin to draw upon Smith Cutter, Jr., the member of their firm then in Paris, for the amount of the acceptances of Coates & Co., and on payment of this draft on Smith Cutter, Jr., to remit to him the acceptances of Coates & Co. Stahelin had left with his agent, in London, the acceptances of Coates & Co. to be attended to.

On the 10th January, 1848, Stahelin drew upon Smith Cutter, Jr., at Paris, at 90 days, for 3,439.37 francs, in payment of the unsettled purchases of merchandise, which draft was accepted by Smith Cutter, and it was then agreed, that upon payment of the last mentioned draft, the defendant, Stahelin, should return to Caffe & Cutter the acceptances of Coates & Co. In March, 1848, this draft fell due and was not paid.

On the 30th June, 1848, the agent of Stahelin, in London, had the two acceptances of Coates & Co. proved in the bankrupt proceedings against Coates & Co., and subsequently received upon them a dividend of one shilling upon the pound from the bankrupt estate.

In November, 1848, Caffe & Cutter, at the city of New York, gave to the agent of Stahelin, and took up the acceptance of Smith Cutter, Jr., two notes, the one for $341.03, at 75 days, and the other for $341.75 payable in 90 days. At the time this was done, the agent of the defendant stated that he had not possession of the acceptances of Coates & Co. but would obtain them.

Caffe & Co. paid the two notes at maturity. Sometime after their payment, the agent of the defendant, at New York, returned to Caffe & Cutter the acceptances of Coates & Co., and it was then discovered by Caffe & Cutter that the acceptances had been proved in the proceedings in bankruptcy, and that the dividend had been paid upon them. The defendant, before the suit was brought, tendered to the plaintiff the amount, with interest, received by him from the bankrupt estate, which tender was refused by the plaintiff, and the defendant, after suit brought, paid the amount tendered into court.

In March, 1854, the plaintiff, as assignee of Caffe & Cutter, brought this action to recover the amount of the two notes given to the defendant in November, 1848, on taking up the acceptance of Smith Cutter, Jr., and which they had paid at maturity.

Upon the foregoing facts, the judge (after stating in the form of an opinion his reasons therefor) gave judgment for the defendant, with costs, dismissing the plaintiff's complaint; and (as the case states) "the plaintiff excepted to the said decision, and to each and every the reasons assigned therefor."

Judgment being entered for the defendant, the plaintiff appealed to the General Term, where the same was affirmed. The plaintiff appeals to this court.

*Samuel Hand*, for the plaintiff.

*A. McCue*, for the defendant.

Wright, J. It is questionable whether there is a sufficient exception in the case. The judge, after finding certain facts,

stated his conclusions of law, and gave judgment for the defendant, dismissing the plaintiff's complaint. The case states that " the plaintiff excepted to the said decision, and to each and every the reasons assigned therefor." Such an exception can hardly raise the question whether, upon the facts found, the plaintiff had any right of recovery. Being of the opinion, however, that no such right existed, and that the case was properly disposed of by the judge, it is unnecessary to press the technical objection.

Now what was the case? The plaintiff's assignors, Caffe & Cutter, were importing merchants in the city of New York, of millinery goods, and the defendant was a manufacturer at Basle, Switzerland. The firm were purchasers of goods from the defendant, and arranged to make payment for them in this way: the defendant was to sell goods to them, who were to establish a credit with Coates & Co., bankers of London. Coates & Co. were to accept the drafts of the defendant for the amount of their purchases, and draw upon them, in New York, in order to cover their acceptances. In August, 1847, the defendant drew two drafts, at 120 days' sight, upon Coates & Co., for £133 12s., being the amount of two invoices of goods. These drafts were duly accepted, but before the maturity of either of them, Coates & Co. failed in business and were declared bankrupts. On the 1st December, 1847, the plaintiff's assignors, by letter, informed the defendant of the failure of Coates & Co. and directed him to draw upon one of their firm (Smith Cutter, Jr.) then in Paris, for the amount of the acceptances of Coates & Co.; and also directed the defendant, upon the collection of the draft so to be drawn on Cutter, to remit to him, at Paris, Coates & Co.'s acceptances. These acceptances had been left by the defendant with his agent in London, to be attended to. On the 10th January, 1848, the defendant, as directed, drew upon Smith Cutter, Jr., at Paris, for 3,437.39 francs; and it was then agreed, that upon payment of this draft, the defendant should return to the plaintiff's assignors the acceptances of Coates & Co. The draft upon Cutter was accepted; fell due in March,

1848, and was not paid.  On the 30th June, 1848 (some four months after the latter draft became due), the agent of the defendant in London had the two acceptances of Coates & Co. proved in the bankrupt proceeding, against that firm, and subsequently received upon them a dividend of one shilling upon the pound from the bankrupt estate.  In November, 1848, Caffe & Cutter, the plaintiff's assignors at the city of New York, took up the acceptance of Smith Cutter, Jr., by giving two notes of the firm, one for $341.03, and the other for $341.75, which were delivered to the agent of the defendant at New York, the agent stating at the time that he had not possession of Coates & Co.'s acceptances but would obtain them.  These notes were paid at maturity, and sometime after such payment, the agent of the defendant, at New York, returned to Caffe & Cutter the acceptances of Coates & Co., and it was then discovered by that firm that such acceptances had been proved in the proceedings in bankruptcy, and that the dividend had been paid upon them. The defendant, before suit brought, tendered to the plaintiff the amount, and interest, received by him from the bankrupt estate, which tender was refused.  Upon this state of facts, the plaintiff, as the assignor of Caffe & Cutter, seeks to recover back the money paid by them in liquidation and discharge of the two promissory notes given to take up the protested acceptance of Smith Cutter, Jr., and, in fact, the acceptance of the firm, to meet its own indebtedness.

Upon what principle such an action can be maintained, I am at a loss to perceive.  The plaintiff's assignors discharge a debt contracted by themselves which they were legally and morally bound to pay, and then ask that the whole money shall be paid back to them, under the pretext of having discovered subsequently to the payment that a part of the debt had been collected from another source.  This is the case which the facts really establish.  Caffe & Cutter (the New York firm), purchased goods from the defendant, a European manufacturer, and who was to be paid for the same in London, upon his giving a credit of four months on the respective purchases.  The arrangement was, as each bill of goods was

ordered, the defendant was to draw for the amount of the invoice on Coates & Co., bankers at London, at one hundred and twenty days' sight, Caffe & Cutter having made a separate arrangement with their bankers to draw upon them at ninety days' sight. It was neither agreed, nor was that the legal effect of the arrangement, that the defendant took the acceptances of Coates & Co. in absolute payment for the goods, discharging the purchasers from all liability. Caffe & Cutter were the purchasers, and primarily liable as such, and their direction to the defendant to draw on Coates & Co. for the amount of their indebtedness (for that was the substance of the arrangement), did not operate to release them from liability as principal debtors for the value of the goods. No one will pretend that if Coates & Co. (not having been kept in funds by Caffe & Cutter, or the contract between them for reimbursement having been broken up), had refused to accept, that Caffe & Cutter could have insisted that the indebtedness was discharged. The latter were, then, the principal debtors, liable at all times for the value of the two invoices of goods in question, and so they regarded themselves; for upon Coates & Co. becoming bankrupts, they directed the defendant to draw upon a member of their firm, then in Paris, for the amount of the purchases. The defendant did draw as directed, and the draft was duly accepted, but at maturity was protested for non-payment. This dishonor of the acceptances of Smith Cutter, Jr. (or rather of Caffe & Cutter), was in March, 1848, and it was nearly four months afterwards (no attention being paid to the claim) that the defendant caused the acceptances of Coates & Co. to be proved in the proceeding in bankruptcy, and in September following (Caffe & Cutter still giving no attention to their protested acceptances), received a dividend of one shilling upon the pound from the bankrupt estate. After this, and in November, 1848, at the city of New York, Caffe & Cutter gave their notes for their protested acceptances (then having been dishonored for over nine months), payable respectively at 75 and 90 days, pay them at maturity, and then ask to recover back the amount of such payment.

A bare statement of the case is enough to show that the judge was quite right in the judgment pronounced by him at the circuit.

On the trial, the ground assumed by the plaintiff was, that the defendant having proved the acceptances of Coates & Co. in bankruptcy, and received a dividend upon them, discharged Caffe & Cutter from all liability to him, and that as Caffe & Cutter, in ignorance of those facts, paid the notes, their assignee could recover back the amount of such payment. Such a position is palpably untenable, and seems to have been abandoned on the argument at bar. The acceptances of Coates & Co. were collateral security for the payment of the debt due by Caffe & Cutter to the defendant; and the latter had the right to use the ordinary and legal means to collect the collaterals. The bills were not proved in bankruptcy, nor the dividend accepted, until after the maturity and protest of the acceptance of Smith Cutter, Jr., "when," to use the language of the learned judge at the circuit, "the defendant had a legal right to apprehend that all he ever could recover upon his claim would be what he could scrape together from two bankrupt estates." But why the proof of the bills, and the acceptance of a dividend from the bankrupt estate, though the facts were unknown to Caffe & Cutter at the time they paid these notes, should entitle them to recover back the amount of such payment, is not perceived. Caffe & Cutter simply paid their own debt on paying the notes; and no right of theirs was impaired by accepting the dividend, but on the contrary, the act was advantageous to them.

The argument at bar has no foundation in the facts, but is wholly fanciful. Caffe & Cutter were the principal debtors, acknowledging themselves to be so by giving their acceptance, and subsequently their notes, for the amount of the debt, and there is no ground for pretending that there was any valid contract between them and the defendant for the purchase of the acceptances of Coates & Co., the consideration of which had wholly failed, and entitling them, on that ground, to reclaim the money paid under it. All the defendant ever agreed to do was, in case the draft on Smith Cutter,

Jr., accepted at Paris, was paid, to return to them Coates & Co.'s acceptances. The draft was not paid, nor was the debt discharged until long afterwards, and when discharged, the acceptances were returned to them.

The judgment should be affirmed.

. SMITH, J. The trial court did not find as a fact that the defendant agreed to receive, or did receive, the acceptances of Coates & Co. in *payment* for the goods purchased by Caffe & Cutter. The acceptances were given and received in pursuance of an arrangement by which it was intended that the defendant should ultimately receive payment, but in fact, the object of the arrangement was defeated by the failure of Coates & Co. before the maturity of their acceptances, and the defendant was not paid.

It is, therefore, a question of law, on the facts found, whether the defendant took the acceptances in *payment* of the indebtedness of Caffe & Cutter, either absolutely or *sub modo*, or whether he held them as mere collateral security.

. As the goods were sold and delivered, and the acceptances were received in pursuance of a prior agreement to that effect, they should be regarded as having been received cotemporaneously with the contracting of the debt. In general, when the obligation of a third person is received from the debtor by the creditor at the time when the debt is contracted, the presumption is that it was agreed to be taken in payment (*Noel* v. *Murray*, 3 Kern., 167), otherwise, however, when it is received on a precedent debt. (Id.) In either case, the presumption may be overcome by evidence of an agreement to the contrary. (Id.)

It is apparent from the course of dealing between the parties, the terms of their arrangement, and their subsequent conduct, that neither of them intended that the receipt of the acceptances of Coates & Co. by the defendant should have the effect to extinguish the indebtedness of Caffe & Cutter. The most that can be said is, that it suspended the right of action against them until the maturity and non-payment of the acceptances, but the creditor could thereafter

recover upon the original cause of action, on producing the acceptances and delivering them up. The parties themselves have given a practical construction to the arrangement, which accords with these views, for long after the maturity of these acceptances (they being unpaid and the acceptors insolvent), Caffe & Cutter paid the defendant for the goods on his promising to deliver to them the acceptances, which he afterwards did. The original indebtedness of Caffe & Cutter, therefore, remained in full force after the maturity of the acceptances, and the latter were held by the defendant as collateral security merely.

He had a right to use all ordinary and legal means to collect the collaterals, and by doing so, he did not release Caffe & Cutter from their original liability. He did no more than that when he presented the acceptances to the English court of bankruptcy, and received a dividend on them. There was nothing in the act prejudicial to Caffe & Cutter. The dividend paid the debt *pro tanto*, and to that extent Caffe & Cutter were benefited by it. It was the same as if Coates & Co. had paid the amount of the dividend voluntarily. Coates & Co. were discharged from their liability as acceptors, not by reason of the fact that the acceptances were proved and a dividend was paid on them, but by force of the decree in bankruptcy. The certificate discharged them from all demands *provable* under the fact as well as from those proved. (Chitty on Cont., 175.) Again, the discharge of Coates & Co. from their liability as acceptors, did not release them from their liability to Caffe & Cutter for moneys advanced to cover the acceptances. It is clear that Caffe & Cutter were not deprived of any remedy against Coates & Co. by the acts of the defendant.

It is argued, however, on the part of the plaintiff, that his assignors bargained for the acceptances unpaid and unmutilated, and on default by the other party, they are entitled to recover back the consideration paid. But the alleged consideration advanced by them was money, which they were under a preëxisting obligation to pay, on the acceptances being delivered to them, and as the holder of the accept-

ances had a right to collect them, the only effect of his having received a partial payment, was to reduce to that extent the amount which the plaintiff's assignors were liable to pay. The amount thus collected having been tendered to them, and paid into court for their use, they have sustained no damage.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.