Allen *v.* Clark.

I do not discover any error in the charge of the court. The judgment should be reversed and a new trial ordered; costs to abide the event.

TALCOTT, J., dissented.

New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 3, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]

———◆———

WILLIAM B. ALLEN, survivor &c., *vs.* LUTHER C. CLARK and WILLIAM D. THOMPSON.

A judgment, recovered against the president of an association, for a debt owing by such association, does not preclude individual members, when sued for the same debt, from contesting their liability for the debts of the association.

A suit against the president is necessary, in the first instance, by the express terms of the statute, before an action against the members can be maintained; but the judgment therein is only so far effective as to reach the property owned by the association. When it fails to secure satisfaction of the debt, then an action against the associates, directly, to enforce the payment of the debt out of their own individual property, is proper.

At most, such judgment against the president, can be no more than *prima facie* evidence in the plaintiff's favor, in a subsequent action against the associates. It will not maintain his right to recover, where the evidence shows that the judgment so recovered exceeds the amount for which the association, or its members, were liable in the action.

Where, at the time of the creation of a debt, the creditor does not know, or suppose, that any other than certain individuals named are interested in the business for which the debt is contracted, the credit will be deemed to have been designed to be limited to those named.

Where the evidence showed that a contract between the plaintiff's firm and M. for the manufacture and sale by the firm of a quantity of castings &c. for certain steel works about to be erected, was made by M. on behalf of the defendants and one other person, they being the only persons named as those who were engaged in putting up such works; and they were mentioned in such terms as to exclude the idea that any others were concerned with them; and the fact that an association was putting up those works was neither

known nor supposed by M. or the plaintiff's firm; *held* that the credit for the castings &c. must have been designed, on the part of the creditors, to be given exclusively to the persons so named, and to no one else.

Although no credit is intended to be given to an association, for articles used in the erection of its works, but castings &c. are made and delivered upon the credit of individual members, yet the association becomes liable for the value of such articles as are furnished upon the order of its agent, and used, during the time it is engaged in erecting the works; because it is the real party to which they were supplied.

Such liability arises out of the fact that the association was the party for which the work was done and the castings furnished; and it continues only so long as the association continues to sustain that relation to the business in which the debt was contracted. When the association ceases to be interested in the works, by a transfer of its interest therein to a new company, it is not liable for goods afterward furnished. As to that portion of the debt, the agent's authority to bind the association ends when it parts with its interest.

Where property to be used by an association, in the construction of its works, is sold and delivered upon the credit of individual members of the association, without any knowledge on the part of the vendor of the existence of the association, or that it is the real debtor, no notice of the termination of its interest in such works is necessary to protect it against liability for subsequent deliveries. Otherwise where the association is known to be the debtor.

When drafts of a third person or company, received by a creditor, are not taken as payment, but simply to apply in payment of the debt when collected, they can have no effect on the creditor's rights, so long as they remain unpaid; except to suspend his remedy until they become due.

They are to be deemed as taken simply as collateral; and the creditor has the right to prosecute them to judgment and execution without prejudice to his right afterward to proceed against the principal debtor, so long as he fails to secure satisfaction.

THIS action was brought by the plaintiff as surviving partner, to recover for castings and other articles sold and delivered by the firm, of which he was a member, and used in the construction of steel works at Clifton, in the county of St. Lawrence. The articles were delivered from time to time between the 20th of April, 1868, and the 21st of July, 1869. At the prices for which they were delivered, they amounted to the sum of $7,640.59; and they were all used about the construction of the steel works. They were contracted for, and ordered by, John B. Morgan, who had the superinten-

dence of the erection of the works. The contract was made by him with Patrick Hackett, who was clerk and agent of the plaintiff's firm. The steel works were commenced by a joint stock company, or association, consisting of seven associates, and called, "The Clifton Steel Association." The agent, Morgan, who contracted for and ordered the articles delivered by the plaintiff's firm, was one of the associates. The association continued the construction and erection of the steel works until the 17th of October, 1868. On the 5th of that month a corporation was formed by some of the associates in the Clifton Steel Association, and called "The Dannemora Steel Works of Clifton." The principal object to be accomplished by the association was the erection of steel works at Clifton, and of the corporation, was the manufacture of steel by means of such works. When the association was formed, it was provided, in its articles, that a corporation should be formed when the works were completed, provided that was deemed best by a majority of the associates. The corporation was formed under that stipulation, before the entire completion of the steel works. And on the 17th day of October, 1868, the association sold and transferred the steel works, and all its other property and rights in action, to the corporation, and the latter assumed and agreed to pay all the debts of the association. From that time until all the articles contained in the plaintiff's account had been delivered, the corporation continued to be the owner of the steel works, and proceeded with their completion, so far as to make use of all such articles. But at no time was the power or authority of Morgan in any way ostensibly changed. He continued to act in the same manner after the formation of the corporation as he previously had done under the association. And no information was given to the plaintiff's firm, or its agent, Hackett, of the change made after the formation of the corporation, further than it might have been inferred

from two drafts being afterward drawn by Morgan in favor of the firm, on the president of the corporation, and received by the firm.

At the time when the contract was first made between Morgan, who acted on behalf of the association, and Hackett, the agent and clerk of the plaintiff's firm, neither of them, nor any member of the firm, had any knowledge or information, as to who were engaged, or interested in the erection of the steel works, beyond Morgan, the defendants, and Samuel B. Smith. And neither the plaintiff's firm, nor Hackett, heard or knew of the formation or existence of the association until after the steel works and all its other property had been transferred to the corporation.

After such transfer, and on the 4th of January, 1869, Morgan drew and delivered to the plaintiff's firm a draft upon Samuel B. Smith, as treasurer of the Dannemora steel company, for the sum of $2,000, to apply on the account the firm had for the articles furnished by it for the construction of the steel works; which was afterward accepted by Smith, as treasurer of the corporation. On the 17th of February, 1869, another draft was drawn, in the same form, by Morgan, and delivered to the firm, for $2,546; which was the balance then remaining of the price of the articles furnished, after deducting the amount of the preceding draft. The second draft was also accepted by Smith in his official capacity. The first of these drafts was due in sixty days, and the second in three months from date. When the second was received, the firm receipted the account as paid by the draft, but it was found as a fact that the drafts were not accepted in payment of the account. These drafts were not paid, but were afterward sued and put into judgment by the plaintiff, as the surviving member of the firm, against Morgan, the drawer and endorser, and the Dannemora Steel Works. But nothing was ever collected on the judgment. The plaintiff's copartner died

on the 16th of February, 1869, and the business of the firm was afterward carried on by the plaintiff as survivor. In that capacity he brought an action for the recovery of the entire demand remaining unpaid, which had accrued for the articles furnished to and used in the erection of the steel works, against Samuel B. Smith, president of the Clifton Steel Association, and recovered judgment for the same. After the return of an execution unsatisfied against him as president of the association, this suit was brought for the recovery of the same demand, agains tthe defendants. It was referred to a referee, who reported in favor of the plaintiff for the sum of $5,159.03, besides interest; which was the balance remaining unpaid after deducting the value of iron and other property received from the association. Judgment was entered upon the report, and from that the defendants appealed.

*John E. Burrill*, for the appellants.

*Magone & Holbrook*, for the respondent.

DANIELS, J. The theory on which the plaintiff, by his complaint, made his case against the defendants was, that they were members of a joint stock association consisting of seven or more shareholders, and liable for its debts after the recovery of judgment against its president or treasurer, and the return of an execution against property unsatisfied. This was the only form in which the cause of action was presented, and the referee heard and decided the issue joined between the parties according to that view of their rights and obligations. That he was bound, by the present rules of pleading, to do. For any different ground of the defendant's liability would have left the complaint unproved in its entire scope and meaning; and that would have presented such a failure of proof as to entitle the defendants to a

judgment in their favor. (*Code,* § 171. *Shuler* v. *Myers,* 5 *Lans.* 170.)

The question arising in the case, therefore, is, whether the proof was of such a nature as justified the referee in concluding that the defendants were liable for the account, in the capacity in which they were sued. If they were not, then the judgment against them cannot be sustained, even though they could be shown to be directly liable upon a positive undertaking of their own ; because the plaintiff elected not to present his case against them in that form. If such a claim can be plausibly made and maintained, they were entitled to have that shown by the plaintiff's complaint ; for in no other way could they be expected to be prepared to meet and contest it upon the trial.

In order to establish their liability, under the allegations contained in the complaint, the plaintiff gave evidence for the purpose of proving that the contract entered into before any of the articles were furnished and delivered by the firm, was made in such a form as to bind the Clifton Steel Association for the payment of the price of all the articles delivered under it for the construction of the steel works. And the referee, by his findings of fact, sustained that view of the contract entered into. But in that he very manifestly mistook the import of the evidence ; for it established the making of no such obligation.

The evidence of the plaintiff, as a witness in the case, upon this subject, may be laid entirely out of consideration. For while he stated the terms of the bargain, he afterward added that he was not present when it was made, and did not testify to it from any personal knowledge. His statements on the subject were therefore in no legal sense, evidence of the fact they related to. The only evidence given, upon that subject, came from Morgan and Hackett, the two individuals by whom the contract was made. And that differed materially from the

information the plaintiff had received, and which he mentioned in his testimony.

It appeared by the evidence of Morgan that he had instructions from Thompson, mainly, but some from Smith, and was directed by the former to go on and erect the steel works, according to the plans and specifications they were to send him, and they would pay all the expenses in erecting the buildings. Acting under such instructions, he made whatever contract was entered into for the articles delivered and furnished by the plaintiff and his firm. And that was made with the agent of the firm. On that subject Morgan, on his cross-examination, stated that he "made no bargain at all with Mr. Allen. All my negotiations, arrangements and bargains were made with Hackett." And, as already mentioned, the plaintiff's testimony was to the same effect, so far as it referred to the fact that the contract was not made with him, but with Hackett, acting on behalf of the firm. In testifying to what transpired when the contract was made, this witness said: "I asked him (Hackett) how much he would make so many tons of castings for, describing them. He gave me his lowest cash price. He made an offer." "I then communicated to Mr. Smith the offer. I accepted the offer, and he did the work." "The agreement for the castings was, to furnish as fast as I wanted them." Hackett's relation of what was said was substantially the same. His testimony was as follows: "In the early part of April, 1868, John B. Morgan came to me and told me that they were going to construct a work at Clifton, of which he was superintendent; that they wanted a large amount of castings, and he wanted our lowest cash price. I consulted with Mr. Allen, and made a price for a certain amount of the castings, for four cents a pound, they furnishing the patterns; and for any alterations or other materials furnished, our regular cash rates." "He told me William

D. Thompson, Luther C. Clark and Samuel B. Smith were the men, and that they were rich."

From this evidence it will be seen that the contract was not, as the referee stated it to be, for the castings needed for the erection of the steel works, and other materials as wanted and ordered. But that it was a contract, as shown by Morgan, for " so many tons of castings," without any particular quantity being mentioned. And, as described by Hackett, for a " large amount of castings at four cents a pound, and any alterations or other materials," at the plaintiff's regular rates. This was very far from being a contract comprehending all the castings needed for the steel works and other articles wanted, as the referee regarded it. The terms used did not bind the plaintiff's firm to make and deliver, or Morgan, or those he represented, to accept and receive, any fixed or definite amount of castings or other materials. But they were of that uncertain and general tenor as left the quantity to be afterward fixed and determined by the future orders and directions given on the one side, and accepted and acted upon on the other, in the prosecution of the enterprise. And that rendered each order given, with its acceptance by the firm, substantially a separate contract, so far as quantity was involved, for the articles required to perform it.

There was no direct evidence given, on the trial, showing how or when the articles were ordered. But from the dates appearing on the account produced and admitted, that may be presumed to have been done at the times and in the manner the dates indicated it to have been the case. Under that presumption the result would follow that all the articles charged after the 16th of February, 1869, the day when the other partner departed this life, should have been excluded from the judgment. For they must have been furnished and delivered by the plaintiff alone, not to fulfill any orders appearing to

have been given to the firm, but to perform the under-takings imposed upon himself.

The judgment recovered in the action brought by the plaintiff against Smith, as president of the joint stock association, does not preclude the defendants from contesting their liability for the debts of the association. Such a suit was necessary, in the first instance, by the express terms of the statute, before the present action could be maintained. But the judgment in it was only so far effective as to reach the property owned by the association itself. When that failed to secure satisfaction of the debt, then an action against the associates, directly, was proper, to enforce the payment of the debt out of their own individual property. (3 *R. S.* 777, §§ 122, 125, *5th ed.*) At most, the judgment against the president of the association could be no more than *prima facie* evidence in the plaintiff's favor. (*Belmont* v. *Coleman*, 21 *N. Y.* 96.) But that would not maintain his right to recover, in the face of all the evidence given upon the trial, showing that the judgment so recovered exceeded the amount for which the association, or its members, were liable in the action. And that was clearly the case here, as the evidence failed to establish an agreement for the sale and purchase of any particular amount of property.

When the case made by the defendants was settled by the referee, he added to his previous conclusions of fact, the findings that the plaintiff and Hackett each had knowledge, before the contract was made, that other persons were interested with Morgan, Thompson, Clark and Smith in putting up the steel works; and that Morgan was authorized by such interested persons to make the contract. And by his report he found that in making the contract, Morgan intended to charge, and Hackett, in behalf of the firm, intended to credit, all the persons interested in the erection of the steel works, and the persons so interested were those then constituting the

Clifton Steel Association. These conclusions are in striking contrast with those contained in the third and fourth subdivisions of the report, where the referee states that at the time when the contract was made, Morgan informed Hackett that the defendants and Smith were the men, and they were rich. And that neither Hackett nor the copartnership, nor any member thereof, knew who composed the association, or was interested in the erection of the works, except Morgan, Smith and the defendants. If their knowledge was so limited as that, and the evidence discloses the best reason for believing that it was, neither the plaintiff nor Hackett knew that any other person was interested in putting up the steel works, but the defendants, Morgan and Smith. And the credit given in the creation of the debt must, for that reason, have been designed to be limited to them. That this was the truth was clearly shown by the evidence given upon the trial; for Morgan stated that he told Hackett, at the time when the contract was made, that the goods were for Thompson, Smith and Clark, and then added, that those were all that he knew were in. Hackett testified to the same effect. He said that he "did not know of any other debtors but William D. Thompson, Luther C. Clark, and Samuel B. Smith, until after the second draft was drawn." And that was not drawn until the 17th of February, 1869, four months after the association had transferred all its property to the corporation known as the Dannemora Steel Works, and ceased to have any connection whatever with the works themselves.

This evidence was clear and direct as to the persons understood to be concerned in the erection of the works. And that given by the plaintiff himself was to the same effect; for he said that all he knew on the subject was, "that Morgan was the agent of some men in New York, *whom he named*, and who were putting up steel works,

Allen *v.* Clark.

at Clifton, and the castings and other articles were in that work."

There is no room for any doubt, under the evidence of these three persons—and that was all which related to this fact—that it was understood when the contract was made, that it was on behalf of Morgan, Thompson, Clark and Smith. They were the only persons mentioned as the persons who were putting up the steel works; and they were mentioned in such terms as to exclude the idea that any others were concerned with them. The evidence on this subject is so complete as to leave the findings of the referee that other persons were known to be interested in the erection of the works to the plaintiff and Hackett, when the contract was made, entirely without the least colorable support. It was equally as clear that the fact was neither known nor supposed, either by Morgan, Hackett or the plaintiff, that the Clifton Steel Association was putting up those works. For, although the articles bear date on the 13th of November, 1867, they contain only Morgan's name as a party to them, at that time. Space appears to have been left for other names, but when the other persons made themselves parties does not appear, by the articles. And Morgan testified that he had not heard of any organization when the instructions he mentioned were given to him; which he received from Thompson and Smith. But he stated he did hear of it before the first draft was drawn. How long before was not mentioned, but it must have been after the contract was made with the plaintiff's firm; for at that time he testified that the defendants and Smith were the only persons he knew to be in the enterprise. Hackett stated that he heard, in the course of the work, about the Clifton Steel Association, but he thought it was after the date of the last draft, and that was dated February 17, 1869. And the plaintiff swore that he did not know that there was any such

body as the Clifton Steel Association, during the accruing of the account.

It was therefore distinctly made to appear by the evidence given on the trial, that Morgan, Smith and the defendants, were the only persons either known or supposed by the plaintiff or the agent, Hackett, to be engaged or interested in the erection of the steel works, until after the 17th of February, 1869, the date of the last draft. Up to that time no other persons were known or understood to be the debtors of the firm, for the articles delivered and furnished for the erection of the steel works. The credit must, therefore, have been designed on the part of the creditor to be given exclusively to those persons, and no one else. And that continued to be the case until after the property of the association, including the steel works, had been transferred to the new corporation, and that body had taken charge of the steel works. No credit could have been intended on the part of the creditor to be given to the association, for any of the articles used in the erection of the steel works, while the association was engaged in erecting them.

But during the time it was so engaged, the association became liable for the value of the articles furnished, because it was the real party to which they were supplied. It was the principal in whose behalf Morgan ignorantly acted in ordering and receiving all such articles. And while it continued to be so, it was liable for the debt created in its behalf and under its authority. Morgan was employed by it as superintendent of the works, and while he acted in that employment the association was liable for the pecuniary consequences of his acts. But as the liability arose solely out of the fact that the association was the principal, as no credit was intended in the course of the transaction to be given to it, and even its existence was unknown to the creditor, it could extend no further than while it continued to sustain that relation to the business in which the debt was con-

Allen *v.* Clark.

tracted. The liability, under the circumstances, arose out of the fact that it was the party for which the work was done, and it could, for that reason, be liable only so long as that fact existed. As soon as it ceased to be interested it necessarily ceased to be liable for all subsequent portions of the debt; for as to that, the authority to bind it ended when it parted with its interest. What was done after that was performed for the corporation; which, from that time, acted through the same agent that had previously represented the association. The liability of the association was similar to that of a dormant partner, continuing as long as his interest in the firm remains, but ending with his withdrawal. In such cases notice of the change to the creditor is not required; for not being supposed or understood to be a debtor by him he cannot be prejudiced by want of notice. (*Brooke* v. *Enderby*, 6 *Eng. Com. L.* 23. *Heath* v. *Sansom*, 24 *id.* 44. *Scott* v. *Colmesnil*, 7 *Marsh.* 416, 423, 424. *Kelley* v. *Hurlburt*, 5 *Cowen*, 534. *Grosvenor* v. *Lloyd*, 1 *Metc.* 19. *Smith's Merc. Law*, 87, 3*d ed. Pars. Merc. Law*, 171, 172.)

While the association did become liable to the firm for the price of the articles supplied to the steel works, it was only for such as were ordered during the time it was engaged in their construction; for they were the only articles it actually contracted for, and no others were received or used in the business it carried on. As to those it became the debtor of the plaintiff's firm, but as to no others. No injustice is done the plaintiff by this limitation of the firm's rights, for the property was sold and delivered upon the understanding that only the four persons named in the evidence became the debtors for it. If the association had been known to be the debtor, notice of the termination of its interest in the work would have been required to protect it against further liability after that time; but as it was not, notice was unnecessary. The two drafts received by the plain-

tiff's firm were not taken as payment, but simply to apply in payment when collected. For that reason they could have no effect on the plaintiff's rights as long as they remained unpaid ; except to suspend his remedy until they became due. (*Noel* v. *Murray*, 3 *Kern.* 167.) They were taken simply as collateral, and the creditor had the right to prosecute them to judgment and execution without prejudice to his right afterward to proceed against the principal debtors, as long as he failed to secure satisfaction. (*Bank of Chenango* v. *Hyde*, 4 *Cowen*, 567, 574, 575. *Youngs* v. *Stahelin*, 34 *N. Y.* 258.)

But as the judgment was for more than the defendants were liable to pay, it should be reversed and a new trial ordered, with costs to abide the event, unless the plaintiff, within twenty days, stipulates to deduct from it that portion of the account accruing for articles ordered after the 17th of October, 1868, with the interest on the same. In which event, as so modified, it should be affirmed, without costs.

MILLER, P. J., concurred.

DANFORTH, J., concurred in the result.

Judgment accordingly.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, March 4, 1878. *Miller, Danforth* and *Daniels*, Justices.]