ATLAS S. S. CO., Limited, v. COLOMBIAN LAND CO.

(Circuit Court of Appeals, Second Circuit. May 24, 1900.)

No. 166.

1. PAYMENT—NEGOTIABLE PAPER.

The giving of a consignee's note to libelant, in lieu of cash, for freight, does not constitute a payment, in the absence of an express agreement to that effect.

2. ELECTION TO HOLD AGENT—RECEIVING NOTE.

The fact that a carrier accepted a consignee's paper, in lieu of cash, for freight, knowing that the consignee was acting for another, does not constitute such an election to hold the consignee as will deprive the carrier of his remedy against the consignor on the dishonor of the paper.

3. CARRIER'S LIEN.
   Under the terms of a bill of lading giving a lien on the goods for all unpaid freights, the carrier was entitled to a lien on the cargo in question only for the freight due on that cargo, and not for a general balance on previous cargoes.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Atlas Steamship Company, Limited, against a cargo of goods belonging to the Colombian Land Company. Judgment for libelant, and respondent appeals. Modified and affirmed.

Moses Weinman, for appellant.
Everett P. Wheeler, for appellee.
Chas. H. Russell, for trustee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The principal question presented by this appeal is whether the court below correctly adjudged the Colombian Land Company, the appellant, to be indebted to the steamship company, the libelant, for the freight on the two cargoes carried by the latter, and which arrived in New York, respectively, September 7, 1898, and September 27, 1898. The appellant, a corporation doing business at Santa Marta, South America, was the owner of the cargoes, and, concededly, was indebted to the libelant for the amount, and remains indebted, unless its liability was extinguished by the act of the libelant in receiving the negotiable paper of Hoadley & Co., consignees of the cargoes, upon delivery of the cargoes to them. The paper went to protest, and has never been paid. The consignees were commission merchants at New York City, and were the selling agents there of the appellant; and, as upon previous occasions, the libelant rendered the accounts for its charges to them, and receipted the freight bills on receiving their 60-day paper, payable in London. It is not claimed that there was any express agreement between the libelant and the appellant, or between the libelant and Hoadley & Co., that the paper should be accepted as payment; and the question is whether an implied agreement to that effect can be deduced from the circumstances. It appears that, by the course of business which had prevailed between the libelant and Hoadley & Co. for many years, the former had allowed the latter a line of credit for freight up to $5,000 on consignments to them; making delivery to them in advance of rendering the bills for freight, and requiring them to pay cash when the $5,000 credit was exhausted, but otherwise accepting their drafts. By correspondence in the spring of 1898 between the libelant and the appellant it was arranged that cargoes shipped by the latter should be delivered to Hoadley & Co., and the freight should be paid in cash upon the ship's arrival in New York.

It has long been the settled rule in this state that taking a note, either of the debtor or of a third person, for a pre-existing debt, is no payment, unless it be expressly agreed to take the note as payment, and to run the risk of its being paid, or unless the creditor parts with the note, or is guilty of laches in not presenting it for payment in due time. He is not obliged to sue upon it. He may return it when dis-

honored, and resort to his original demand. Thornton v. Payne, 5 Johns. 74. This is the rule which generally prevails in this country, although it does not obtain in some of the states. Where the note of a third party is taken at the time of a creation of a debt, as upon a sale of goods, the rule is otherwise; and it is held that the presumption is that it was taken in payment, in the absence of countervailing evidence. Whitbeck v. Van Ness, 11 Johns. 408; Noel v. Murray, 13 N. Y. 167; Youngs v. Stahelin, 34 N. Y. 258; Gibson v. Tobey, 46 N. Y. 637; Shaw v. Insurance Co., 69 N. Y. 286; Hall v. Stevens, 116 N. Y. 201, 22 N. E. 374. In such a case the transaction may be regarded as equivalent to an exchange of property.

In the present case the debt existed before the drafts were taken, and obviously they were taken with a view to accommodate Hoadley & Co., by giving them time instead of requiring them to pay cash. The receipt of the payment of freight bills is a circumstance of little value, and of no more importance than is the balancing of an account upon the books by a creditor when he receives the debtor's note for the amount.

If the libelant had been unaware that Hoadley & Co. were acting as the agents for the appellant in receiving and paying freight upon the cargoes in question, it is entirely clear that the acceptance of the drafts would not have been payment, and that the libelant, upon discovering the relation, could recover the amount of the appellant; the rule being that, where an agent acts for an undiscovered principal, the party contracting with him, upon discovering the principal, may sue either the principal or the agent. This rule does not apply, however, when the relation is known by the contracting party at the time of the transaction, and the circumstances indicate an election upon his part to give exclusive credit to the agent. As declared in this state (Coleman v. Bank, 53 N. Y. 388–394), the rule is that "one who deals with an agent is not concluded from resorting to the principal, unless it appears that, with full knowledge of the facts, he elected to take the sole responsibility of the agent, and that he designed to abandon any claim against the principal." Meeker v. Claghorn, 44 N. Y. 349; Foster v. Persch, 68 N. Y. 400. In Meeker v. Claghorn the plaintiffs furnished materials to an architect, knowing him to be the agent of the defendants in ordering them, and charged them to him upon the books; but the court said the affirmative was with the defendants to show that the plaintiffs gave exclusive credit to the agent, and held the defendants liable. What circumstance will import such an election is a question upon which there is much diversity of opinion. Paterson v. Gandasequi, 15 East, 62; Addison v. Gandasequi, 4 Taunt. 574; Thomson v. Davenport, 9 Barn. & C. 78; Curtis v. Williamson, L. R. 10 Q. B. 57; Muldoon v. Whitlock, 1 Cow. 290; Jones v. Insurance Co., 14 Conn. 501; Paige v. Stone, 51 Mass. 160; Provision Co. v. Tucker, 8 Mo. App. 95. It was said by Cowen, J., in Taintor v. Prendergast, 3 Hill, 72, that "the usual and decisive indication of an exclusive credit is where the creditor knows there is a foreign principal, but makes his charge in account against the agent." Observations to the contrary, however, are found in Oelricks v. Ford, 23 How. 49, 16 L. Ed. 534. Election implies a deliberate intention,—a definite purpose to

accept one debtor, or a particular remedy in lieu of another. The facts here are wholly indecisive of that intention. The libelant made the arrangement to accommodate Hoadley & Co., by giving them credit to a certain limit, without any reference to the appellant, and quite regardless of its effect upon any transaction which might subsequently take place between the appellant and itself. In the course of the business dealings which ensued between the libelant and the appellant, the libelant continued to recognize the arrangement, and permitted it to extend to the settlements for freight upon cargoes of the appellant delivered to Hoadley & Co.

If it had been made to appear that the state of the accounts between the appellant and its agents had been changed to its prejudice in consequence of the dealings between the libelant and Hoadley & Co., different considerations would be presented. As it is, we conclude that the court below properly adjudged the libelant entitled to recover for the unpaid freight.

By the decree of the court below, the libelant was adjudged to have a lien upon a cargo subsequently shipped by the appellant, and delivered in New York November 23, 1898, for the freight unpaid upon the two previous cargoes. The bills of lading under which all the cargoes were shipped contained a clause providing as follows:

"The carrier to have a lien upon the goods, to be made available if necessary for sale, for and until the payment of all duties, expenses, loss, or damages, and all unpaid freights, primages, and charges."

If the libelant was entitled to any lien, it is by virtue of this clause. The words "unpaid freight," in this clause, plainly refer to the goods described in the bill of lading; and the bill of lading is to be read as providing for a lien for all unpaid freights upon these goods. According to the construction of the court below, the clause was intended to secure to the carrier the unpaid freight upon goods which had been delivered to the shipper months before. This is a forced and violent construction. The conditions in such instruments are to be strictly construed against the carrier, who prepares the contract.

Our conclusions in respect to the rights of the other appellee, Wells, trustee, etc., were announced at the argument, and it is unnecessary to recapitulate them. We conclude that the decree below was correct, and should be affirmed, except as it adjudges a lien in favor of the libelant upon the proceeds in the registry of the court arising from the sale of the last cargo. With this modification it is accordingly affirmed, with interest. Costs of the appeal are awarded to the appellee Wells, trustee.

The cause is remitted to the court below, with instructions accordingly.