DUNCAN v. UNITED STEEL CO.

(District Court, N. D. Ohio, E. D. August 24, 1917.)

No. 25.

CARRIERS ⬤⟞196—FREIGHT—LIABILITY OF CONSIGNEE.

Under an arrangement between them by which a railroad company delivered all cars of goods consigned to a manufacturing company on the latter's tracks and presented bills monthly for freight due thereon, such delivery and acceptance of a car raises an implied promise on the part of the consignee to pay the freight thereon if unpaid, and it is not released from such liability as matter of law by the fact that the consignor is also liable for the freight either under the law or by express promise to pay it.

At Law. Action by W. M. Duncan, as receiver of the Wheeling & Lake Erie Railroad Company, against the United Steel Company. On demurrer to petition. Overruled.

Squire, Sanders & Dempsey, of Cleveland, Ohio, for plaintiff.
Lynch, Day, Fimple & Lynch, of Canton, Ohio, for defendant.

WESTENHAVER, District Judge. This cause is before me on a general demurrer based on the ground that the petition does not state facts sufficient to constitute a cause of action.

The controlling facts are as follows:

On or about October 27, 1911, the Chicago Scrap Iron Company delivered to the Belt Railway Company of Chicago, a common carrier doing business in that city, a carload of scrap iron consigned to the defendant at Canton, Ohio. A bill of lading was issued by the Belt Railway Company and signed by it and the consignor. This bill of lading was in form approved by the Interstate Commerce Commission by Order No. 787, of date of June 27, 1908. The Chicago Scrap Iron Company appears therein as the consignor and the defendant as the consignee. One of the conditions therein contained is as follows:

"The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and if required shall pay the same before delivery."

On the face of this bill of lading was also printed these words:

"If charges are to be prepaid write or stamp here to be prepaid."

The bill of lading in the blank space left following these words contained written thereon the word "Prepaid." The bill of lading also had printed upon it the words:

"Received $———— to apply in prepayment of the charges on the property described hereon. ————, Agent or Cashier, per ————. [The signature here acknowledges only the amount prepaid.]"

No amount was filled in the blank space, and no signature of agent or cashier or any other person was signed thereto.

The freight charges were not in fact prepaid. The Belt Railway Company, being a terminal switching railway, delivered the car to the Wabash Railway Company at Chicago. The latter company, according to custom, upon receipt of the car was to collect the freight, but when received the scrap iron company had become insolvent, and collection of the freight from it was not possible. The Wabash Railway Company thereupon changed the waybilling so as to make the shipment a collect one, and forwarded the car by the line of railway company of which the plaintiff is receiver to the defendant. The Wabash Railway Company failed to notify either the plaintiff or the defendant that it had not collected the freight from the consignor, or of this change in the waybilling. The plaintiff received the car with a waybill showing that the freight was not to be prepaid, but was to be collected upon delivery, and transported the car to Canton, Ohio, and there delivered it to the defendant without collecting the freight charges before making delivery.

A credit arrangement between the plaintiff and defendant was then in existence whereby plaintiff delivered on an industrial side track maintained by defendant all incoming freight without requiring payment of charges before delivery. This applied uniformly to prepaid shipments as well as to shipments upon which freight was to be collected before delivery. The practice was to present in due course of business bills to defendant for all freight charges on shipments thus delivered; whereupon defendant would make payment.

In this case this course was pursued, and, the car having been delivered to defendant, a statement of freight charges was sent to defendant on or about November 13, 1911. The latter by letter dated November 13, 1911, notified the plaintiff that the car of scrap iron had been purchased by the defendant and had been shipped to it under a bill of lading showing the freight charges were prepaid or to be prepaid. The petition avers that thereupon the defendant refused to pay the freight charges, and paid its indebtedness to the seller upon the basis that the freight charges had been prepaid.

Upon the foregoing facts I am of opinion that this demurrer should be overruled.

It is settled law that the shipper or consignor is, on the facts above stated, under a contract obligation to pay the freight charges, and that this obligation may be enforced regardless of any promise contained in the bill of lading requiring the consignee to pay, or regardless of any new obligation assumed by the consignee to pay the same, no*

amounting to an actual payment. 10 Corpus Juris, 445, 446; Portland Flouring Mills Co. v. British & Marine Insurance Co., 130 Fed. 860, 65 C. C. A. 344; Coal & Coke Railway Co. v. Buckhannon River Coal & Coke Co. (W. Va.) 87 S. E. 376, L. R. A. 1917A, 663; Wooster v. Tarr, 8 Allen (Mass.) 278, 85 Am. Dec. 707; Atlas S. S. Co. v. Colombian Land Co., 102 Fed. 358, 42 C. C. A. 398 (2 C. C. A.); 2 Hutch. on Carriers, § 810.

The law also undoubtedly is that on the facts above pleaded (eliminating for the present the facts as to the agreement for prepayment) a promise is implied against the consignee to pay the freight charges. The consignee is presumptively the owner of the goods while in transit, and is responsible as between the consignee and consignor for any loss or damage that may be sustained during transportation. The acceptance by the consignee of goods shipped on a bill of lading containing a provision that the owner or consignee is to pay the freight raises against the consignee an implied promise on his part to pay the freight. If a bill of lading is silent as to the person to make payment of freight, a delivery to and an acceptance by the consignee is sufficient under some conditions to warrant a finding that the carrier was looking to the consignee for payment, and will also raise an implied promise as against the consignee for the payment thereof.

In the present case the credit arrangement between the plaintiff and defendant under which freight was delivered and the freight charges were thereafter billed and paid creates a situation from which a finding would be justified of an implied promise to pay such freight charges. 10 Corpus Juris, 445, 446; 2 Hutch. on Carriers, 799, 806–810; Union Pac. Ry. Co. v. Am. Smelting Co., 202 Fed. 720, 121 C. C. A. 182 (9 C. C. A.); Penn. Ry. Co. v. Titus, 216 N. Y. 17, 109 N. E. 857, L. R. A. 1916E, 1127; Elwell v. Skiddy, 77 N. Y. 282; Central Ry. Co. v. MacCartney, 68 N. J. Law, 165, 52 Atl. 575; Old Colony Ry. Co. v. Wilder, 137 Mass. 536.

If I am right in holding that an implied promise of the consignee to pay freight is stated in the petition, then I cannot say as a matter of law that this promise is extinguished, or that such a promise does not arise because of the facts stated touching the shippers' agreement to prepay freight. The facts pleaded and appearing on the bill of lading show, at most, only a promise on the part of the consignor to pay the freight. The consignor's express promise, it seems to me, can have no greater force and effect than the consignor's legal liability to pay the freight, which liability is always present in a shipping contract, unless expressly waived. In all such cases the consignee's promise is implied, and may be enforced notwithstanding the primary liability of the consignor still exists. The two promises are independent of each other, and the carrier may obtain both and sue on either, as is most convenient to it. Such is the ordinary rule, and I cannot on the facts pleaded hold as a proposition of law that the addition thereto of an express promise to prepay by the consignor calls for a different conclusion.

Payment by the consignor would, of course, extinguish all liability for the freight charges. The giving, however, of a note or of a check therefor, which is afterwards dishonored, may or may not be a pay-

ment, depending upon the express understanding of the parties at the time the note or check was given or accepted. If nothing is agreed to in that respect, the acceptance of a note or check will not be regarded as a payment and will not extinguish the debtor's original obligation. Atlas S. S. Co. v. Columbian Land Co., 102 Fed. 358, 42 C. C. A. 398 (2 C. C. A.); The Kimball, 3 Wall. 37, 18 L. Ed. 50; Segrist v. Crabtree, 131 U. S. 287, 9 Sup. Ct. 687, 33 L. Ed. 125; 3 Page on Contracts, §§ 1397, 1398. Nor on the facts pleaded can it be said as a proposition of law that an estoppel arises against the plaintiff under the principles announced in Central Ry. Co. v. MacCartney, 68 N. J. Law, 165, 52 Atl. 575.

If the bill of lading had recited that all freight charges had been prepaid, and the defendant had made payment in full to the seller relying on this recital, and without knowing or having knowledge of the facts imputing to it notice that the recital of payment was erroneous, the plaintiff might then be estopped to assert the contrary; for undoubtedly the plaintiff must accept responsibility for the act both of the Belt Railway Company and of the Wabash Railway Company. The bill of lading, however, shows at most an agreement only to pay the freight, not that it had been paid. It may even be true that a jury would be justified in finding that the bill of lading, considered in connection with the other facts, shows that the freight was not paid, and that defendant was thereby charged with knowledge that it was not paid. Nor can it be said, as a proposition of law, that on the facts pleaded the defendant made payment to the seller in ignorance of the fact that the freight was still owing to the carrier. The facts are not sufficiently developed to justify at this time a conclusive finding either way, but a finding by a jury against the defendant on this point should not, it seems to me, be disturbed by the court.

The demurrer will be overruled. Leave will be given defendant to answer within two weeks. Any exception may be noted to this ruling.