## CENTRAL WAREHOUSE CO. v. CHICAGO, R. I. & P. RY. CO.

Circuit Court of Appeals, Eighth Circuit.
June 8, 1927.

No. 7627.

1. **Carriers 194—Carrier, mistakenly issuing "prepaid" order bill of lading and delivering shipment without collecting freight to warehouse company presenting bill of lading, held entitled to recover freight from warehouse company (Interstate Commerce Act, § 6; Elkins Act, § 1; Hepburn Act, § 2 [Comp. St. §§ 8569(7), 8597]).**

Where carrier through mistake issued "prepaid" order bill of lading covering shipment consigned to shipper's order, and without collecting freight delivered shipment to warehouse company presenting properly indorsed bill of lading, *held*, under Interstate Commerce Act 1887, § 6, and Elkins Act, § 1, both as amended by Hepburn Act, § 2 (Comp. St. §§ 8569 [7], 8597), intended to elminate every form of discrimination, whether intentional or unintentional, carrier unable to recover freight charges from shipper which had become insolvent was entitled to recover amount of such charges from warehouse company.

2. **Carriers 188—Carrier's mistake in issuing "prepaid" bill of lading held not to estop demand for charges.**

Carrier's unintentional act in mistakenly issuing "prepaid" bill of lading and delivering shipment to warehouse company without collecting freight *held* not to estop it from demanding payment of its lawful charges.

In Error to the District Court of the United States for the District of Minnesota.

Action by the Chicago, Rock Island & Pacific Railway Company against the Central Warehouse Company. Judgment for plaintiff (14 F.[2d] 123), and defendant brings error. Affirmed.

Briggs, Weyl & Briggs, of St. Paul, Minn., for plaintiff in error.

Thomas D. O'Brien, Alexander E. Horn, Edward S. Stringer, and Philip Stringer, all of St. Paul, Minn., for defendant in error.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and DAVIS, District Judge.

DAVIS, District Judge.   [1] Defendant in error brought suit to recover freight charges, and demurred to the answer of plaintiff in error, which set up the fact that it had accepted the shipment in reliance upon a bill of lading indorsed "prepaid." The demurrer to the answer was sustained, and judgment entered against the Central Warehouse Company for the freight charges. The Central Warehouse Company has sought a review of this judgment by writ of error.

The facts briefly are as follows: Cullen Wholesale Grocery Company, of Omaha, Neb., in May, 1923, shipped to St. Paul, Minn., over the lines of the Union Pacific Railroad and Chicago, Rock Island & Pacific Railroad, a carload of sugar. The shipment moved on an order bill of lading to the order of the shipper, notify Central Warehouse Company at St. Paul. The bill of lading, which was issued by the Union Pacific Railroad, marked by it "prepaid," contained this provision: "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property." The car was delivered to the plaintiff in error, Central Warehouse Company, by the Rock Island Railroad, upon surrender of the bill of lading properly indorsed. No freight charges were demanded, and the Central Warehouse Company, acting in reliance upon the "prepaid" indorsement, took the car and disposed of it for the account of the shipper and remitted the proceeds of the sale, less its commission for handling.

It now appears that freight charges were not in fact prepaid, and demand subsequently was made by the railroad company for their payment. Central Warehouse Company refused to pay these charges. The amount of the charges, if any are due, is not in dispute. It also appears that the shipper is insolvent and the railroad company has been unable to collect the charges from it.

By the Elkins Act of February 19, 1903, c. 708, § 1, as amended by the Hepburn Act of June 29, 1906, c. 3591, § 2, it is provided:

"It shall be unlawful for any person * * * or corporation to offer, grant or give, or to solicit, accept or receive any rebate, concession or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier, subject to said act to regulate commerce, and the acts amendatory thereof, whereby any such property shall *by any device whatever* be transported at a less rate than that named in the tariffs published and filed by such carrier as is required by said act to regulate commerce and the acts amendatory thereof, or whereby any other advantage is given or discrimination is practiced. Every person or corporation, whether carrier or shipper, who shall knowingly offer, grant, or give, or solicit, accept, or receive any such rebates, concessions or discriminations shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than $1,000, nor more than $20,000." Section 8597, Comp. Statutes.

By section 6 of the original Interstate Commerce Act of February 4, 1887, c. 104, as amended by the Hepburn Act of June 29, 1906, c. 3591, § 2, it is provided as follows:

"No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property as defined in this act unless the rates, fares and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith between the points named in such tariffs than the rates, fares and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or *remit in any manner or by any device* any portion of the rates, fares and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." Paragraph 7, § 8569, Compiled Statutes.

As to the general purpose of the law the Supreme Court said in United States v. Koenig Coal Co., 270 U. S. 512, 46 S. Ct. 392, 70 L. Ed. 709: "We have often declared that the purpose of Congress in the Elkins Law was to cut up by the roots every form of discrimination, favoritism and inequality."

In Pittsburg, etc., Railroad Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151, the carrier delivered a consignment of freight and collected the charges, $15, the amount specified in the bill of lading. The tariff rates on file showed that the amount that should properly have been collected was $30. The carrier was permitted to recover the balance, for the reason that the consignee by accepting delivery assumed the obligation of paying the full lawful rate, and the hardship imposed by reason of the misunderstanding, and change of situation in reliance upon it, cannot amount to an estoppel and thus avoid the requirements of the statute.

In New York Central & Railroad Co. v. York & Whitney Co., 256 U. S. 406, 41 S. Ct. 509, 65 L. Ed. 1016, the carrier delivered nine carloads of melons, fruit, and vegetables to a commission merchant, who paid all charges demanded, sold the merchandise, and remitted to the consignor. The carrier, upon discovering that it had collected less than lawful rate, brought an action against the consignee for the balance. The court held that "the transaction * * *

amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge. The consignee could not escape the liability imposed by law through any contract with the carrier."

In Louisville & Nashville Railroad Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900, it was held that, "if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time * * * or not until later."

The Central Warehouse Company was not the consignee of the goods, but the bill of lading was indorsed to it. Its title to the property was the same as that of the consignee. Whatever obligations were imposed upon the original party to the contract of carriages was necessarily assumed by the plaintiff in error when it accepted the bill of lading and demanded the possession of the car of sugar.

Congress, in order to eliminate every form of discrimination, has provided that there shall be permitted neither an intentional nor an unintentional deviation from the predetermined schedule of rates. An intentional act in granting a shipper a preferential rate was made a crime. To permit a departure from the regular rate provided only that it is the result of a misunderstanding or a mistake defeats the very purpose of the law. The Supreme Court in considering the statute has determined that the carrier has a lien for the usual charge, and that the consignee in accepting the shipment in any case assumes the obligation of discharging that lien. This obligation on the part of the consignee is not to be avoided because it imposes a hardship, or because he has relied upon the fact that the charges have been paid and changed his position to his detriment. The prime consideration that led to the enactment was deemed of such consequence to the public interest that individual cases of hardship ought not overcome the law.

[2] The initial carrier in this case by mistake caused the bill of lading to indicate that the freight charges had been paid by the consignor. The duty imposed upon the carrier by the act applicable to interstate shipments was to collect the lawful rate. This obligation was not only in its own interest, but in the interest of the public. It is not permitted to escape its duty by an oversight and thereby effect a discrimination. It is not within its power to so conduct itself that

the plain terms of the statute will amount to nothing. The unintentional act of the carrier does not estop it from demanding payment of the lawful charge.

The action of the court in sustaining the demurrer to the answer was proper, and the judgment is affirmed.