## F. BURKHART MFG. CO. v. FORT WORTH & D. C. RY. CO.

### No. 12988.

Circuit Court of Appeals, Eighth Circuit.

June 25, 1945.

Otto R. Erker, of St. Louis, Mo. (Rassieur, Kammerer & Rassieur, of St. Louis, Mo., on the brief), for appellant.

Oliver J. Miller, of St. Louis, Mo. (Lashly, Lashly, Miller & Clifford, of St. Louis, Mo., and Barwise & Wallace, of Fort Worth, Tex., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This action was brought by the appellee railway company to recover from the appellant freight undercharges upon certain shipments of cotton from Lubbock, Texas, to St. Louis, Missouri. The cotton was consigned by John B. Pruden, as shipper, to himself as consignee, under shipper's order—notify bills of lading. The appellant was the party specified in the bills to be notified of the arrival of the shipments at St. Louis. The bills of lading were marked "prepaid." The appellant had purchased the cotton from Pruden according to sample. The terms of sale were f.o.b. St. Louis, Missouri, payment to be made, on sight drafts, through the First National Bank in St. Louis on arrival and inspection of the shipments. After the shipments arrived, the appellant inspected them, found the cotton up to sample, paid the sight drafts, obtained and presented to the appellee the bills of lading endorsed by Pruden, and received the cotton.

Because of a conspiracy between Pruden and the agents of the appellee at Lubbock, the cotton which was shipped had been erroneously classified as cotton regins (reginned cotton), which took a lower tariff rate than was applicable to the shipments in suit. Pruden paid the cotton regins rate.

As a result, the freight charges paid by Pruden were $3,494.65 less than the appellee was required by law to charge and collect for the transportation of the shipments. § 6(7), Title 49 U.S.C.A. The appellee attempted to collect the undercharges from Pruden, but was unable to do so because of his insolvency. It then brought this action against the appellant, which had no knowledge of the conspiracy between Pruden and the appellee and no knowledge that the cotton had been improperly classified or that the freight charges had not been paid in full.

In its answer, the appellant set up the fraud of the appellee both as a defense and as a so-called counter-claim. The case was tried to the court upon a stipulation of facts. Judgment was entered for the appellee for the amount of the undercharges. This appeal followed.

This case is ruled by the opinion of this Court in Central Warehouse Co. v. Chicago, R. I. & P. R. Co., 8 Cir., 20 F.2d 828, which requires the affirmance of the judgment unless, as the appellant contends, the cases are distinguishable because of the fact that the undercharges in the Central Warehouse case resulted from a mistake of the carrier, while in the instant case the undercharges were the result of a deliberate intent on the part of the appellee's agents to violate the law. But in the Central Warehouse case this Court said (page 829 of 20 F.2d):

"Congress, in order to eliminate every form of discrimination, has provided that there shall be permitted neither an intentional nor an unintentional deviation from the predetermined schedule of rates. An intentional act in granting a shipper a preferential rate was made a crime. To permit a departure from the regular rate provided only that it is the result of a misunderstanding or a mistake defeats the very purpose of the law."

In that case it was, apparently, contended that if the failure to collect the tariff rate was due to a mistake on the part of the carrier, one in the situation of the appellant could not be compelled to pay, nor could the carrier be compelled to collect from it, the unpaid freight charges. This Court made it clear that the question whether the deviation from the tariff rates was intentional or not was of no legal importance in such an action as this. See, also, Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 521, 59 S.Ct. 612, 83 L.Ed. 953.

In answer to the appellant's contention that the unlawful misapplication by the carrier of its tariff to the shipments in suit relieved the appellant of its obligation to pay the balance due under the tariff rate, it is only necessary to point out that the appellant was charged with knowledge of the lawful rate, and that when it accepted the shipments it became obligated as a matter of law to pay any uncollected balance of the freight charges, regardless of any acts or omissions of the carrier. See Kansas City Southern R. Co. v. Carl, 227 U.S. 639, 653, 33 S.Ct. 391, 57 L.Ed. 683; Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 98, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A.1915E, 665; Pittsburgh, Cincinnati, Chicago & St. Louis R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; New York Central & Hudson River R. Co. v. York & Whitney Co., 256 U.S. 406, 408, 41 S.Ct. 509, 65 L.Ed. 1016; Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 65, 44 S.Ct. 441, 68 L.Ed. 900; Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 520-521, 59 S.Ct. 612, 83 L.Ed. 953; Pettibone v. Richardson, 7 Cir., 126 F.2d 969, 970.

The "counterclaim" of the appellant is in reality an assertion that if the carrier is entitled to judgment for $3,494.-65 on its claim for undercharges, the appellant is entitled to a judgment in an equal amount against the carrier for damages caused by the latter's fraud. The appellant, however, as one who was conclusively presumed and legally bound to know the tariff rate, cannot be heard to say that it was deceived or damaged by false representations about the rate. See Pettibone v. Richardson, 7 Cir., 126 F.2d 969, 970.

The judgment of the District Court was clearly correct and it is affirmed.