**NORTHERN PACIFIC RAILWAY COMPANY, a corporation, Plaintiff,**

v.

**ASSOCIATED GENERAL CONTRACTORS OF NORTH DAKOTA, a corporation, and C. L. Hoffman, Defendants.**

Civ. No. 3135.

United States District Court
D. North Dakota,
Southwestern Division.
May 29, 1957.

128

Charles A. Feste, of Conmy & Conmy, Fargo, N. D., for plaintiff.

Richard P. Rausch, of Rausch & Chapman, Bismarck, N. D., for defendants.

REGISTER, Chief Judge.

This suit is one which arises under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and specifically Sections 3(2) and 6(7), which is a law regulating commerce, by reason of which this court has jurisdiction.

The suit was brought by the Northern Pacific Railway Company, a corporation, against the Associated General Contractors of North Dakota, a corporation, and C. L. Hoffman, to recover alleged freight charges on a shipment of roofing slabs, which shipment moved over the lines of the plaintiff in interstate commerce. Said shipment is described generally in paragraph 4 of the plaintiff's amended complaint. The action is now before this court for determination of plaintiff's motion for summary judgment, made in accordance with the provisions of Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The plaintiff having apparently abandoned its claim against the defendant Associated General Contractors of North Dakota, a corporation, this memorandum, when referring to "the defendant", refers specifically to Mr. C. L. Hoffman only.

The facts, as appear from all the pleadings and affidavits on file herein, are as follows:

Defendant C. L. Hoffman placed an order with the Cemex Corporation, a manufacturer of certain building materials, of Quincy, Illinois, for 99 roofing slabs. This material was shipped by the manufacturer, F.O.B. Quincy, Illinois, over the plaintiff's and connecting carrier's lines, consigned to the defendant at Bismarck, North Dakota. Notice of arrival of the shipment was duly received by defendant from plaintiff's agent. Defendant inquired of such agent whether the freight charges were prepaid or collect, and was informed that he, the agent, did not know. However, permission was given by plaintiff's agent, to the defendant, to unload the shipment. The goods were thereupon unloaded and delivered to defendant's building site in Bismarck, North Dakota, where defendant intended to use the slabs in the construction of a new home. The unloading and delivery of said goods were done by a local delivery service, which was then acting as defendant's agent and pursuant to defendant's specific employment, request and authority. After the material was placed at the job site, defendant examined same and found it to be wet, and discovered that some pieces thereof were broken or cracked. Defendant thereupon notified the manufacturer's representative of the condition of the slabs, and refused the shipment and has also refused to pay the freight charges thereon.

Defendant was initially informed by the manufacturer's representative that a claim for goods damaged in transit would be filed, by the shipper, with the receiving carrier. However, just five days later, in a letter from the president of the Cemex Corporation to his representative, a copy of which was sent to the defendant, the defendant was advised that he should file the claim for damaged goods with the delivering carrier, the plaintiff in this action. The basis of this later advice was apparently the shipper's realization that the goods had been shipped freight collect; the initial advice was

based upon information that the goods had been shipped freight prepaid. Apparently there is some misunderstanding between the shipper and consignee as to the terms of the original purchase order as regards the payment of freight charges; there is nothing before this court which shows the original agreement regarding the payment of freight charges, other than a copy of the original bill of lading, which positively indicates the goods were shipped collect, the freight charges to be paid by the consignee, the defendant herein.

██ On the face of the bill of lading appears the following:

"Subject to Section 7 of conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. (Signed) The Cemex Corp."

This is generally referred to as the "non-recourse" clause, and was duly signed by the consignor. The purpose and effect of the execution of such non-recourse clause is to relieve the consignor from liability for all freight and other lawful charges, and to place such liability upon the consignee, upon delivery of the goods.

"* * * if the non-recourse clause is signed by the consignor and no provision is made for prepayment of freight, delivery of the shipment to the consignee relieves the consignor of liability * * * and acceptance of the delivery establishes the liability of the consignee to pay all freight charges." Illinois Steel Co. v. Baltimore & Ohio Railroad Co., 320 U.S. 508, 513, 64 S.Ct. 322, 325, 88 L.Ed. 259, citing Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 66 (note 3), 44 S.Ct. 441, 68 L.Ed. 900; Pittsburgh, Cincinnati, Chicago & St. Louis R. Co. v. Fink, 250 U.S. 577, 581–583, 40 S.Ct. 27, 63 L.Ed. 1151; and New York Central & Hudson River R. Co. v. York & Whitney Co., 256 U.S. 406, 408, 41 S.Ct. 509, 65 L.Ed. 1016.

██ The clauses of the uniform bill of lading govern the rights of the parties to an interstate shipment and are prescribed by Congress and the Interstate Commerce Commission in the exercise of the commerce power; they have the force of federal law. Illinois Steel Co. v. Baltimore & Ohio Railroad Co., supra. The defendant here, C. L. Hoffman, was a "* * * party to an interstate shipment * * *" and he is bound by the provisions of the Bill of Lading under which the goods were shipped to him, as consignee.

██ Defendant contends that he did not accept the shipment. However, in his own affidavit filed in opposition to plaintiff's motion for summary judgment, the defendant states, in effect, that after he received notice from plaintiff's agent that the shipment had arrived, he asked for and received permission to unload the goods (after being told by plaintiff's agent that he, the agent, did not know whether the material was sent prepaid or collect); that it was unloaded and transported and delivered to defendant's building site by a local transfer company which was employed for that purpose, and authorized to do so, by defendant; that, at the job site defendant personally examined the shipment; and that after discovering some damage to a part thereof a test was made, at which time defendant's contractor was present and assisted therewith. From such facts it clearly appears, for the purpose of this motion, that said defendant assumed, had, and exercised full and complete control and authority of and over said roofing slabs from the time they were unloaded and taken from the possession and custody of the plaintiff. This court finds, as a fact, for the purpose of this motion, that said defendant did accept said shipment.

██ In the event of a failure on the part of a consignee to accept delivery of goods shipped to him, the carrier has the right to offer the goods for sale and sell

the same, thereby reducing the amount of freight charges due by the amount received from the sale of the goods. Lowden v. McAndrews, D.C., 2 F.R.D. 36. In this case such procedure could not be followed by plaintiff, since the custody, possession and control of the shipment had passed from plaintiff to defendant. The only course of action left to plaintiff, since the consignor was relieved of liability for such charges by virtue of its having executed the non-recourse clause of the bill of lading, was to demand payment from the defendant and to proceed to collect the lawful charges. This it is plaintiff's legal duty to do, pursuant to the provisions of the Interstate Commerce Act. Central Warehouse Co. v. Chicago, R. I. & P. Ry. Co., 8 Cir., 20 F.2d 828.

■ Various assertions are made by defendant in his pleadings and in his affidavit filed in opposition to the motion now under consideration, by way of defense. Defendant asserts that the shipment should have been, under the contract between consignor and consignee, sent prepaid, and that in fact consignor's agent had erroneously informed him, in writing, that it had been sent prepaid. Even though this be true, it is not a defense to plaintiff's cause of action. While such facts may have placed defendant in a position whereby his liability for freight charges is a hardship upon him, yet his legal liability therefor is not affected.

"*  *  *  [It]  *  *  *  may be in the present as well as some other cases a hardship upon the consignee *  *  * ; but instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation." And,

"It is alleged that a different rule should be applied in this case because Fink by virtue of his agreement with the consignor did not become the owner of the goods until after the same had been delivered to him. There is no proof that such agree-

ment was known to the carrier, *nor could that fact lessen the obligation of the consignee to pay the legal tariff rate when he accepted the goods.*" (Emphasis added.) Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink, supra [250 U. S. 577, 40 S.Ct. 28].

Defendant also asserts that the first time he saw the shipment was after delivery thereof to the job site; that examination there disclosed damage to some of the material, in that there was some breakage and an appearance that it was wet and not usable; that he promptly advised consignor's agent of his findings; and that thereafter he (defendant) failed to file a claim with plaintiff carrier because he believed that the consignor had filed or was filing proper claim, and that he further believed all matters concerning such damage, including any claim relative thereto, were being handled between plaintiff and the consignor. There is nothing before the court that establishes the cause of or liability for such alleged damage.

■ That a counter-claim or set-off for damaged goods may be asserted against a carrier to reduce the amount of the unpaid freight charges is clear. Chicago & N. W. Ry. Co. v. Lindell, 281 U.S. 14, 50 S.Ct. 200, 74 L.Ed. 670. However, in this case no counter-claim or set-off for such alleged damage has been pleaded by defendant, and no such issue is before the court. Also, the bill of lading here involved provides that a claim for damage must be filed within nine months after delivery of the goods, and if the claim is disallowed it must be sued upon within two years and one day from the day when notice in writing of disallowance of such claim is given to the claimant by such carrier. Filing within the required time is a condition precedent to recovery. No claim has been filed; the time within which such claim may be filed has elapsed; and no suit for damages has been instituted. Therefore, assertion of such a claim at this time is barred. Norton v. Shotmeyer, D.C., 72 F.Supp. 188.

Defendant further asserts that "The bill of lading * * * is an acknowledgment of the receipt of goods in good order and is a prima facie evidence of condition * * *"; that "The agent for plaintiff filed a report which conclusively shows the damage"; and that "This has never been a question involving quality of merchandise but of damage in transit with a failure to accept." As heretofore stated, no claim for such alleged damage was filed within the required time, no counter-claim or set-off was pleaded, and such matter is not at issue. It appears to the court that the defendant, as a matter of law, is liable for the full amount of the freight charges.

Defendant also contends that the plaintiff has made settlement with the consignor for the damaged goods, without the knowledge or consent of the defendant, and that by reason thereof, said defendant is not liable for the freight charges. This contention is contrary to the law as stated in Louisville & Nashville R. Co. v. Central Iron & Coal Co., supra, wherein it is said [265 U.S. 59, 44 S.Ct. 442]:

"Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

This general statement of the law applies to all acts or omissions of the carrier, whether the same were intentional, F. Burkhart Mfg. Co. v. Fort Worth & D. C. Ry. Co., 8 Cir., 149 F.2d 909, or unintentional, Central Warehouse Co. v. Chicago, R. I. & P. Ry. Co., supra.

It clearly appearing that there is no genuine issue as to any material fact, and for the reasons hereinbefore stated, the plaintiff's motion for summary judgment against defendant C. I. Hoffman is granted.

"An issue of fact is not genuine unless it has legal probative force as to a controlling issue * * *. If it is made clearly to appear on such (motion for summary judgment) that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment." Durasteel Co. v. Great Lakes Steel Corp., 8 Cir., 205 F.2d 438, 441.

It is so ordered.