**MISSOURI PACIFIC RAILROAD COM-
PANY, Plaintiff,**

v.

**NATIONAL MILLING COMPANY, Inc.,
Defendant.**

Civ. A. No. 580-67.

United States District Court
D. New Jersey.

Nov. 27, 1967.

Starr, Summerill & Davis, by S. Lewis Davis, and William C. Davis, Camden, N. J., for plaintiff.

Samuel Kalikman, Camden, N. J., Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., of counsel, for defendant.

## OPINION

COHEN, District Judge:

The sole question here is whether a common carrier, under the Interstate Commerce Act,[1] is entitled to recover freight charges on an interstate shipment of goods, where the carrier issued a uniform straight bill of lading which it itself marked "freight prepaid," and when in reliance thereon, the consignee accepted delivery and paid the purchase price and full freight charge to the consignor who never remitted to the carrier; do these circumstances require double payment by the consignee?

Plaintiff-carrier, Missouri Pacific Railroad Company, a Missouri corporation, in 1964 delivered four carloads of hardwood flooring from Arkansas to defendant, National Milling Company, Inc.,

---

1. 49 U.S.C.A. § 1 et seq. Jurisdiction is involved pursuant to 28 U.S.C.A. § 1337.

a New Jersey corporation, at Merchantville, New Jersey, for which it demands payment from the defendant of $2,992.61 for its freight charges, plus interest.

Defendant's answer admits receipt of the merchandise, but states that it had paid its consignor, Ozark Lumber Industries, Inc., of Clarksville, Arkansas, in full for both the purchase price of the lumber and the freight charges, as its arrangement with its consignor called for prepaid freight, and the notations on the uniform straight bill of lading issued by the plaintiff-carrier stated that the freight had been prepaid by Ozark.

The matter is presently before the Court on plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c), F.R.Civ.P., and its companion motion to strike defendant's written interrogatories pursuant to Rule 33, F.R.Civ.P. Plaintiff supports its motion for judgment with an affidavit by E. C. Kerschen, its Regional Manager, of St. Louis, Missouri, which recites the pertinent facts and states that repeated demands for payment from both Ozark, the consignor, and defendant, National Milling, the consignee, have been ignored. Defendant filed a counter-affidavit setting up payment in full and cross moved for an order permitting it to amend its answer to set forth an affirmative defense of estoppel.

█ Considering, in reverse order, the defendant's motion to amend its answer to raise the defense of estoppel on the ground of payment in full to the consignor on a bill of lading marked pre-

paid by the plaintiff, that motion hereby is granted; and the answer will be considered so amended in order to close the pleadings so that present disposition of plaintiff's motion for a judgment on the pleadings can be made on the merits of this litigation. Rule 15, F.R.Civ.P.; 3 Moore's Fed.Pract. § 15.02 p. 813; Barron & Holtzoff, 1A Fed.Pract. & Proced. § 358, pp. 395–396. An order to this effect shall be submitted as hereinafter provided.

The matter is presented on the pleadings, the undisputed facts contained in the affidavits, and upon the briefs and oral arguments of counsel.

After futile demands for payment from Ozark, the consignor, the plaintiff-carrier made demand upon the defendant-consignee on April 13, 1966, some seventeen months after the last delivery for which defendant had paid Ozark, at which time the plaintiff advised the defendant that the consignor was in financial difficulty and could not, or would not, pay. The defendant-consignee, claiming it had paid Ozark as required by the bill of lading prepared by the plaintiff and in accordance with its agreement with Ozark previous to shipment, refused to pay a second time. The plaintiff filed suit on May 31, 1967, approximately a year later.

Plaintiff's argument for judgment in its favor is substantially that under the *Interstate Commerce Act*, supra, and in particular *section* 6, par. (7),[2] its right to collect payment in full for its freight charges is absolute and that the obligation of a consignee who accepts delivery

2. "§ 6, par. (7) Transportation without filing and publishing rates forbidden; rebates; privileges.

No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for

such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." 49 U.S.C.A. § 6(7), as amended.

of the goods brought to him by the common carrier to make payment is equally absolute. Plaintiff contends further that it is not only the right of a carrier, but also its statutory duty under the *Act*, and in furtherance of the public interest, to collect from any person legally liable thereafter, be it consignor or consignee, and that, hence, its conduct, intention or mistake, or any combination of those factors, constitutes no defense to its action for recovery of its lawful, published, statutory tariff rates. Plaintiff cites National Carloading Corp. v. A. T. & S. F., 150 F.2d 210 (9 Cir. 1945) and Bernstein Bros., etc. v. Den. & R. G. W. R. Co., 193 F.2d 441, 444 (10 Cir. 1951), as authority for requiring it to collect the full lawful tariff rate under the *Act*. In seeking to impose an absolute obligation upon the consignee to pay the carrier, plaintiff also relies upon Duncan v. United Steel Co., 244 F. 258 (D.C.Ohio, 1917), Pittsburgh, Cincinnati, Chicago & St. Louis R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919), and contends that neither mistake by the carrier in marking the freight charges as prepaid, Great Northern Railway Co. v. Hyder, 279 F. 783 (D.C.D.C.1922), nor collusion between a shipper and a railroad agent, F. Burkhart Mfg. Co. v. Fort Worth & D. C. Railway Co., 149 F.2d 909 (8 Cir. 1945), can defeat the carrier's absolute right to collect proper freight charges. Plaintiff concedes that requiring the consignee to pay twice in the present case would be a hardship and that the law might be harsh in a particular case, *Fink*, supra, but urges that under the statute and in the public interest, it has no choice other than to legally compel payment to it, regardless of whether it results in double payment or not by the consignee, so long as the carrier is in fact properly paid once in full.

Defendant maintains that, inasmuch as the plaintiff itself marked the bills of lading as "freight prepaid," it, the defendant, in reliance thereon, accepted the goods and paid the consignor in full, including proper freight charges, and that consequently the equity of the matter lies with it, thus foreclosing double payment. Defendant cites Davis v. Akron Feed & Milling Co., 296 F. 675 (6 Cir. 1924), and Southern Pacific Co. v. Valley Frosted Foods Co., 178 Pa.Super. 217, (1955), 116 A.2d 70.

The issue is not without difficulty. Does statutory construction sustain the plaintiff's claim so as to interdict considerations of common law equity? Our answer is that it does not. For the plaintiff's position is that, while the law is harsh, nevertheless, it must bring this action whether it wants to or not, because it is compelled by public policy to do so under the *Act* which forbids the granting of preferences in tariff rate treatment in any guise. We disagree. As was stated in Southern Pacific Company v. Valley Frosted Foods Co., supra, at page 71 of 116 A.2d:

> "Any time a litigant appears before this or any other Court with such a proposition, they must be absolutely certain of two things. First, that there is a binding precedent which inhibits the Court from examining the equities of the case, and second, that the overpowering public policy requiring the strict application of the law is actually involved in the case."

The public policy underlying the *Act* seems clear, the express purpose of which is to prevent preferences in tariff rates. Boston & M. R. Co. v. Hooker, 233 U.S. 97, 110–113, 34 S.Ct. 526, 58 L.Ed. 868 (1914). To enforce compliance with the statutory prohibition against discriminatory freight charges by an interstate common carrier, the statute imposes upon the carrier both the right and the duty to collect the full, scheduled, published tariff charges for freight delivered, regardless of any error in the statement of charge by such carrier. F. Burkhart Mfg. Co. v. Fort Worth & D. C. R. Co., 149 F.2d 909 (8 Cir. 1945); Louisville & N. R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed 853, 855 (1915); Southern Pacific Co. v. Wheaton Brass Works, 5 N.J. 594, 599, 76 A.2d 890 (1950).

The theme of those cases is that where there has been a deviation from the legal tariff rate, such as an undercharge or no payment by anyone at all among those engaged in the triangular transportation arrangement, then the public policy underlying the *Act* which imposes full freight charge is unrelenting. This is so, even where the charge is represented to have been prepaid in full, either by the carrier or shipping consignor, if in fact the legal tariff has not been charged. See Annotation, 88 A.L.R.2d § 3, p. 1378 et seq. Aside from any defense which a consignee may have as against his consignor in such instances, Louisville & N. R. Co. v. Central Iron and Coal Co., Infra, the doctrine of estoppel as against an interstate common carrier for an incorrect charge is no defense against enforcement of the balance of the published legal tariff. For, as was said by Chief Justice Stone in Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, at page 257, 66 S.Ct. 101, 105, 90 L.Ed. 47 (1945).

"For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest." [3]

The authorities relied upon by the plaintiff do not sufficiently simulate our facts. The *Fink* case, supra, of course, is the classic authority for imposing absolute liability for full payment of a lawful freight charge, where there has been an underpayment, in order to avoid a preference, and this includes a consignee. This rule has been followed in a number of cases by both federal and state courts; Louisville & N. R. Co. v. Central Iron and Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924); Illinois Steel Co. v. Baltimore & Ohio R. Co., 320 U.S. 508, 64 S.Ct. 322, 88 L.Ed. 259 (1944);

Chicago, R. I. & P. Ry. Co. v. Central Warehouse Co., 14 F.2d 123 (D.C.Minn. 1926), aff'd 20 F.2d 828 (8 Cir. 1927); F. Burkhart Mfg. Co. v. Fort Worth & D. C. Ry. Co., 149 F.2d 909 (8 Cir. 1945); Great Northern Ry. Co. v. Hyder, 279 F. 783 (D.C.Wash.S.D.1922); Western & Atlantic R. Co. v. Underwood, 281 F. 891 (D.C.N.D.Ga.1922); Southern Pacific Co. v. Wheaton Brass Works, supra.

There is no quarrel with the principle fixing the liability of the consignee as established in this line of cases. But this principle, in our view, does not mandate double payment by the consignee as a matter of absolute liability to guarantee the carrier's collection of payment. In the instant case, the carrier made the full and proper charge; it, itself, marked the bill of lading "prepaid" thereby, in effect, extending credit and looking for payment to the consignor; and finally, the consignee in fact made full payment before accepting delivery. Under these circumstances, the defendant neither sought, received, nor retained any preference interdicted by the statute, and hence the public policy against preferences is not involved at all. Southern Pacific Co. v. Valley Frosted Foods Co., supra. That being so, then the doctrine of estoppel is properly interposed and may be applied. Griffin Grocery Co. v. Penna. R. Co., 93 Ga.App. 546, 92 S.E. 2d 254 (1956); Central G. R. Co. v. Leonard, 4 Ohio L.Abs. 271 (1926, C.P.); cf: United States v. Western P. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

We are not persuaded to the contrary by those decisions which practically bestow sovereignty upon interstate carriers and immunize them against their own negligence in an instance, such as here, where the consignee has actually paid

---

**3.** While the public interest referred to in the *Scott Paper* case, supra, pertained to public domain in the field of patents upon the expiration of a patent, the same public interest is involved here under the Interstate Commerce Act in an area sought to be made secure against discrimination and preferences in tariff rate charges for freight transportation. Surely, the principle protecting the paramount interest of the public is the same. The Court cited *Fink*, supra, *inter alia*, as authority.

the full and proper charge to the consignor in accordance with the shipping arrangements made between them and with the representation by the carrier's bill of lading that its charge was prepaid. In such a situation, the consignee has done exactly what is legally required of it under the *Act*. Requiring double payment is not merely harsh, as mentioned in *Fink*, supra, it is clearly unconscionable and manifestly inconsistent with any consideration of abstract public interest. The consignee, too, is a member of that public sought to be protected by the prohibition under the *Act* against preferences by differential rate treatment. The obligation to pay the full and proper tariff charge imposed by the *Act* was satisfied and its public policy met, when the defendant did in fact make full payment to the consignor as arranged and as instructed by the carrier's bill of lading. The carrier's private interest of effectively collecting payment must be left to the pursuit of the shipper with whom it contracted. L. & N. R. R. v. *Central Iron and Coal Co.*, supra. That such consignor, Ozark, may be insolvent, as appears from the affidavits, is a circumstance outside the pale of the issue presented here for determination.

The case of *Griffin Grocery Co.*, supra, is startlingly similar to the instant circumstances. The views expressed by the Georgia Court of Appeals a decade ago are strikingly appropriate today. As stated at 92 S.E.2d, 256:

"But even if the extension of credit does involve unjust discrimination, the facts of this case raise it above a mere matter of public policy. Individual rights and ethical and moral conduct are older and most often superior to matters of public policy based on pecuniary considerations alone.

\*　　\*　　\*　　\*　　\*　　\*

Conduct likely to lead to injury must not be allowed to justify itself by a claimed righteous public policy which is of doubtful relevance. *The undercharge cases are so dissimilar that it is hardly necessary to compare the principles involved.* When the rail-road in this case expressly represented that the full freight charges had been paid, and caused the defendant to pay to the shipper the cost of the goods bought together with the freight charges it put itself in the position of not being able in equity and good conscience to deny its representation. *Had it not been for the misrepresentation the defendant could have protected itself by paying the freight to the plaintiff.* We think that under the facts of this case the plaintiff is estopped to deny that the freight was paid and we think that it is not entitled to the judgment prayed for. Solvency or insolvency of the shipper and efforts to collect from it are irrelevant to the issue." [Emphasis supplied]

Here, as in *Griffin*, the plaintiff deprived the defendant consignee of its right of protection regarding its liability which it could have exercised by paying the freight charges directly to the carrier upon acceptance of the shipment, had not the carrier's bill of lading directed payment to the consignor. Application of the doctrine of equitable estoppel in such circumstances neither defeats the purpose of the *Act,* nor does violence to the public policy sought to be protected. Interstate carriers do not rise to the dignity of government or its agencies. And, although the court employed estoppel in U. S. v. *Mason & Dixon Lines*, 222 F.2d 646 (6 Cir. 1955), where the government was a party, as provided by the *Act*, 49 U.S.C. § 22, it expressly approved the equitable doctrine between private parties employed in *Davis*, a quarter of a century earlier in the same Circuit. Other cases relied upon by plaintiff deal principally with shipping arrangements *inter sese*, among the carrier, consignor and consignee where no payment for freight was forthcoming. In Duncan v. United States Steel Co., 244 F. 258 (D.C. Ohio, 1917), there was an arrangement for deferred freight billing and payment. The court there, at page 261, presupposed the facts of our case and expressly left open the question of estoppel where

the consignee paid the seller on a marked prepaid freight shipment. The Northern Pacific Ry. Co. v. Associated Gen'l Contractors, 152 F.Supp. 126 (D.C.N.D.So. Div.1957) case had to do with a collect shipment, where the consignor withdrew his liability by a no recourse endorsement on the freight bill and thereby substituted the liability of the consignee by the latter's acceptance of the goods. In the case of Central Warehouse v. Chicago, R. I. P. Ry. Co., 20 F.2d 828 (8 Cir. 1927), the carrier through mistake issued a "prepaid" order bill of lading covering a shipment consigned to the shipper's order. The carrier surrendered the goods to a warehouseman, without collecting its freight charges. The warehouseman disposed of the goods to a purchaser, on behalf of the shipper, and remitted to the shipper, less its commission. The shipper was insolvent, and the court permitted recovery from the warehouseman on the authority of *Fink* and Louisville & N. R. Co. v. Central, supra. There was no reliance nor payment made by the warehouseman. The freight charges *in toto* were ignored entirely. Those facts certainly do not approximate the facts or equity in the present case.

We shall not reward the carrier for its admitted negligence, by penalizing the consignee, simply because it has been victimized by the consignor who received payment but, apparently, converted it to its own use. It may well be as was said in Great Northern Ry. Co. v. Hyder, supra, 279 F. at page 786, and as approved by the Supreme Court of New Jersey in Southern Pacific Co. v. Wheaton Brass Works, supra:

"[That] the shipper, the carrier, and the consignee are all agents and trustees for the public, and no complications arising out of the agreements between them, or shuffling, should defeat the purpose of the act requiring the full and exact payment of the freight as fixed by the filed, posted and published tariff."

But the defendant consignee here, even considered as an agent or trustee for the public interest, has discharged in full measure its obligation to pay its debt as required by law. The *Act* does not make him an insurer of the carrier's business. Statutory construction, no less than legislative intention, must be conscionable in order that courts might be just. It was not the intention of Congress to overturn the law or concomitant equities of transportation contracts and arrangements; rather, the genius of the *Act* was the abolition of preferential tariff treatment of shippers despite any guise, intention, or accident resulting in or designed to defeat this legislative objective of uniform rates. When the *Act* is focused upon the circumstances of this case, no preferential treatment, intentional, collusive, coincidental or otherwise, appears to have been secured by the defendant consignee.

As indicated at the outset, counsel for the defendant, in accordance with its motion, shall submit an order amending its answer to plead the affirmative defense of estoppel. The plaintiff's motion for judgment in its favor will be denied. The affidavits of the parties raise no new matters outside of the pleadings, but merely particularize them, and they will be excluded for the purposes of disposition pursuant to Rule 12(c) F.R.Civ. P. No genuine issue of material fact being presented, but only a question of law upon the merits, a judgment will be entered on the pleadings, as amended in favor of the defendant. See: Barron & Holtzoff, 1A Fed. Pract. & Proced. § 358 pp. 392–396.

The plaintiff's motion to strike written interrogatories being moot will be denied.

Counsel for the defendant shall submit appropriate orders in accordance herewith.